Flack *vs.* Green.——1831.

---

JAMES FLACK *vs.* CHARLES GREEN.——*December,* 1831.

The promissory note of I, endorsed by G and P, fell due at *Washington,* on the 6th, where payment was then demanded, and refused.   The notices to the endorsers were enclosed in a letter addressed to P, at *Baltimore,* and mailed at *Washington* on the evening of the 6th. . The mail left *Washington* every morning, and arrived at *Baltimore* at an early hour the same afternoon. Both the endorsers lived in *Baltimore,* and notice was delivered to G, the first endorser, on the 9th.   HELD, that G was discharged from his liability as endorser, the notice being one day too late ; in legal presumption the notice reached P on the 7th.

After evidence had been given, that a letter containing two notices for endorsers upon a dishonored note, had been mailed under cover to one of them, at W, directed to B, where they both resided, it was proposed to prove, that it was the invariable and uniform practice of the endorser's house and counting room, to which the notices had been directed, to forward such notices immediately upon the receipt of them, and the witnesses who were employed in such counting room, had no doubt, and believed, from the course of their business, that they had forwarded one of the notices to the other endorser.   HELD, that the proposed evidence was incompetent, to prove the delivery of a notice in due time to the other endorser.

No person can become a party to a bill, unless his name appears on some part of it.

One whose name is not upon a bill, though interested in it, is not entitled to the benefit of the rule, that each party is entitled to an entire day, for the purpose of giving notice to the person preceding him, on a dishonored note or bill.

APPEAL from *Baltimore* County Court.

*Assumpsit* by the appellant, as endorsee, against the appellee, as the endorser of a promissory note for $482 80, dated *Washington,* March 3d 1825, payable at eleven months, of which one *John Pic,* of that place, was the maker.   The general issue was pleaded.

1. At the trial the plaintiff proved the endorsement of *Charles Green*, who resided in the city of *Baltimore* at the time the note became due; and also proved the signature of said *Pic*, the maker; and then read in evidence the testimony of *John G. McDonald*, notary public, residing in the city of *Washington*, taken under a commission issued for that purpose, viz: "I find by reference to my notarial book, that a similar note to that now exhibited to me, marked **A**, was delivered to me by the *President and Directors of the Bank of Washington*, to be presented for payment, to the drawer thereof, and that after the hour of three o'clock in the afternoon, on the 6th day of February, 1826, I presented the said note for payment, at the store of *John Pic*, in *Washington* city, and demanded payment of it, and was answered by a lady officiating therein, and believed by me to be the wife of the said *John Pic*, that *Mr. Pic* was not within, and that it could not be paid. I then prepared a notice of the non-payment, addressed it to *Charles Green*, and a similar notice addressed to *Henry Payson & Co.* the second endorsers on the note; which notices I enclosed and put into the post office in the city of *Washington*, on the evening of the same day, addressed to *Henry Payson & Co. Baltimore, Maryland;* the next morning I returned the note to the *President and Directors of the Bank of Washington*, accompanied with the protest made by me." And for the purpose of shewing that the notice of non-payment addressed to *Charles Green*, the defendant, and mailed at *Washington*, on the 6th day of February, 1826, under cover to *Henry Payson & Co.* the next succeeding endorsers to the said defendant, as set forth in the evidence of *John G. McDonald*, was transmitted to the defendant in due time, the plaintiff offered to prove by *Henry P. Sumner*, a member of the mercantile house of *Henry Payson & Co.* that it was the invariable and uniform practice of that house, to forward such notices immediately upon receipt of them, and that he had no doubt, from the course of their business, that they had forwarded this particular notice to *Charles Green*,

but that he had no recollection upon the subject of forwarding this particular notice to the defendant. That from the general course of their business, and from the particular custom of their counting house, in respect to such notices, he believed that the notice in question had been duly transmitted to the defendant. And the plaintiff further offered similar evidence, by all the clerks of the house of *H. P. & Co.* To this evidence the defendant objected, as being incompetent, and inadmissible to prove that notice of the non-payment of the said note was received by, or given to, the defendant: which objection the court (Archer, Ch. J.) sustained, and refused to permit the said evidence to be given to the jury. The plaintiff excepted.

2. In addition to the testimony given in the preceding bill of exceptions, and which is hereby made a part of this exception, the plaintiff still further to support the issue on his part, proved by *Henry W. Kiser*, a legal and competent witness, that the following notice—

*Mr. Charles Green,*—"*Baltimore*, 9th February, 1826. *Dear Sir:* The note of *John Pic*, for $482 80, of your endorsement, has come to hand protested. I now feel you, as the endorser, bound for the payment of the note, and I shall hold you as such, and shall expect the payment of the same in the course of to-day or to-morrow. *James Flack.*" is in his hand writing, and that at the time it bears date, he was a clerk in the employ of the plaintiff, and that by the direction of the plaintiff he delivered a notice, of which the above is a true copy, on the 9th of February, 1826, at the store of *Coley and Green*, of which firm the said defendant was a partner. And the plaintiff then proved by *Henry P. Sumner*, that soon after Messrs. *Flack & Co.*, of which firm the plaintiff was a partner, became known to *Henry Payson & Co.* Mr. *Samuel B. Coley*, the partner of the plaintiff, stated, that from the nature of their business as brewers, or mixers of liquors, and manufacturers of cordials, that they would require foreign liquors and wines, to

use in their establishment, and that he stated at the same time, that they were strangers in *Baltimore*, and did not wish to keep a bank account, and would therefore wish *Henry Payson & Co.* to collect their bills receivable, and that in purchasing such articles as suited their business, they would buy from *Henry Payson & Co.* when they could get them upon as favorable terms as from other persons; that after such understanding, the house of *James Flack & Co.* dealt largely with *Henry Payson & Co.*, purchasing various articles of merchandise, on credit, and placing with them various promissory notes, from time to time, as they received them in the course of their business; that *Henry Payson & Co.* occasionally advanced sums of money to said *Flack & Co.* as they required them, which they so advanced, as well for their personal confidence in *Flack & Co.* as in the faith of the said notes, which they had deposited with them in the course of their dealings as aforesaid. And also proved by the same witness, that the amount of notes credited *Flack & Co.* in their account current with the house of *Payson & Co.*, included the note on which the present suit is instituted; and that the charge therein afterwards stated of the said note, to the debit of *James Flack*, was in consequence of the said note having been returned protested for non-payment, by the drawer, who resided in the city of *Washington*, and that the dealings of the said house of *Henry Payson & Co.* with *James Flack*, continued after the dissolution of the partnership of *James Flack & Co.*, without any new understanding between them as regards advances, and that such advances were made after such dissolution, in the same manner as before; that they kept a mutual interest account with each other, both before and after the dissolution aforesaid, and that from the nature and course of their dealings with the said house of *Flack & Co.* and with the said plaintiff, after the dissolution aforesaid, they considered themselves as the bankers of the said *Flack & Co.* and of the plaintiff, after the dissolution aforesaid; and the said witness being asked by the counsel for the defen-

dant, to give a definition of the word "banker," as he applied it to this particular case, stated, that he meant thereby to express "a sort of combined agency in the purchase of goods, and collection of notes, and making advances of money." It was proved on the part of the defendant, by the cross examination of the said witness, that *Henry Payson & Co.* when they received the notes for collection from *Flack & Co.*, placed them in their books as bills receivable, and when they were paid, placed the amount thereof to the credit of *Flack & Co.;* that *Henry Payson & Co.* did not consider themselves in any way bound by the receipt of such notes, unless the money due on them was paid at their maturity; that all the expenses of collecting said notes were paid by *Flack & Co.;* that no advance was made by *Henry Payson & Co.* on the note on which the suit was brought, and that if the same had been paid at maturity, and *Flack* had called for the money paid thereon, it would have been given to him as his own money; and that if the note had not been paid, and *Flack* had asked for the advance of that amount of money, it would have been given to him on his personal credit; that *Henry Payson & Co.* were not in the habit of receiving notes for collection from persons residing in the city of *Baltimore,* and that witness had no knowledge that any other note was placed in the hands of *Henry Payson & Co.* for collection, except those received from *Flack & Co.*, and that they were not the bankers of any other house in the like manner in which they were the bankers of *Flack & Co.;* and further proved, that the store of *Coley and Green* was about five hundred yards distant from the store of *Flack;* and further proved, that the said note was not endorsed by *James Flack,* the plaintiff, at the time it fell due; and that the mail from *Washington* for *Baltimore,* left the former place early in the morning, every day for the latter, where it arrived at an early hour in the same afternoon: whereupon the defendant prayed the court to instruct the jury, that the plaintiff is not entitled to recover, and assigned the following reasons: 1. That the

plaintiff had not used due and resonable diligence in the delivery of notice to the defendant, of the dishonor of the note on which this suit was brought. 2. That such notice being delivered on the 9th of February, 1827, was one day too late; and 3. That there was no evidence of notice, to charge the defendant as endorser of the note on which this suit was brought; which instruction the court (ARCHER, Ch. J.) accordingly gave.

The plaintiff excepted, and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, Ch. J., EARLE, STEPHEN, and DORSEY, J.

*Johnson*, for the appellant, cited *Miller vs. Hackly*, 5 *Johns.* 375. *Pritt vs. Fairclough, et al.* 3 *Camp.* 305. *Hagedorn vs. Reed, Ib.* 379. *Scott vs. Lifford*, 1 *Ib.* 246, 249. *Chitty on Bills*, 213, 225, 318, 319. *Longdale vs. Trimmer*, 15 *East.* 291. *Mead and Rogers vs. Engs*, 5 *Cow.* 303. 3 *Kent*, 73.

*Gill*, for the appellee, cited, *The Cumberland Bank vs. McKinley*, 6 *Harr. and Johns.* 527, 3 *Kent*, 46, 75, *Chitty on Bills*, 22, 23, 316. *Bank of Columbia vs. Magruder*, 6 *Harr. and Johns.* 181. *Bank of Columbia vs. Fitzhugh*, 1 *Harr. and Gill*, 248. *Vincent vs. Harlock, et al.* 1 *Camp.* 442, 443, *note* 1. *Smith vs. Mullett*, 2 *Camp.* 208. *Darbishire vs. Parker*, 6 *East.* 5, 6, 7. *U. States vs. Barker*, 12 *Wheat.* 560. *Morgan vs. Woodworth*, 3 *Johns. Cas.* 89.

STEPHEN, J., delivered the opinion of the court.

This suit was instituted in *Baltimore* County Court, by the appellant, against the appellee, upon a promissory note drawn by a certain *John Pic*, in favor of the appellee, by whom it was endorsed to the appellant. The general issue was pleaded, and on the trial of the cause, the plaintiff proved the endorsement of the payee on the note, who re-

sided in the city of *Baltimore* at the time the note became due, and also the hand writing of the maker. *John Pic,* the maker of the note, residing in the city of *Washington,* the note was transmitted to the bank of *Washington* for collection, by *Henry Payson & Co.* of *Baltimore,* as the agents of *James Flack,* by whom it had been placed in their hands, for a similar purpose. When the note became due, it was placed by the bank, in the hands of a notary, who demanded payment thereof, which being refused, he prepared a notice thereof, addressed to *Charles Green,* and a similar notice addressed to *Henry Payson & Co.,* who were endorsers on the said note ; which notices the notary endorsed, and put in the post office, in the city of *Washington,* on the evening of the same day, addressed to *Henry Payson & Co.* at *Baltimore.* In this case, two bills of exceptions were taken in the court below. In the first exception, for the purpose of showing that the notice of nonpayment, addressed to *Charles Green,* the defendant, and put into the post office at *Washington,* on the 6th February, 1826, the day the note became due, under cover to *Henry Payson & Co.* the next endorsers, was transmitted to the defendant in due time; the plaintiff offered to prove by sundry witnesses, that it was the invariable, and uniform practice of that house, to forward such notices immediately upon receipt of them, and that they had no doubt from the course of their business, that they had forwarded this particular notice to *Charles Green,* the defendant, but that they had no recollection upon the subject of forwarding this particular notice to the defendant. That from the general course of their business, and from the particular custom of their counting house, in respect to such notices, they believed the notice in question had been duly transmitted to the defendant. To this evidence the defendant objected, as being incompetent, and inadmissible to prove that notice of the non-payment of the said note was received by, or given to him ; which objection the court sustained, and refused to permit the said evidence to be given to the jury.

In this opinion of the court we do not think there is any error.

In the opinion given by the court in the second exception, we also entirely concur. The note became due on the 6th February, 1826, and the proof offered in this exception established the fact, that *Green*, the defendant, never received notice, until the 9th of that month, which was unquestionably one day too late. The name of *Flack* was not endorsed upon the bill; and in *Chitty on Bills*, 23, the principle is stated to be a general one, " that no person can become a party to a bill, unless his name appears on some part of it." For this rule he refers to the opinion of *Buller*, in the case of *Fenn vs. Harrison*, in 3 *Term*, 759, where he says: " In the case of a bill of exchange, we know precisely what remedy the holder has, if the bill be not paid. His security appears wholly on the face of the bill itself. The acceptor, the drawer, and the endorsers are all liable in their turns, but they are only liable, because they have written their names on the bill." The law seems to be well settled, that where all the parties reside in the same place, each party has a day to give notice. In 1 *Wheat. Selw.* 295, the law is laid down to be, " where there are several endorsements, and the holder gives notice of dishonor to his endorser, neither that endorser, nor any prior endorser is bound to transmit the notice of dishonor on the very day on which he receives it. Each successive endorser will be considered as having used due diligence, if he transmit the notice of dishonor, on the day after it is received, in a case where all the parties live in the same place; but if he neglect giving the notice on that day, and the day after, it will be too late." In *Jameson vs. Swinton*, 2 *Camp. N. P. C.* 373, the same rule was recognized by LAWRENCE, J. viz: " that each party to the bill has a day to give notice." The name of *Flack* not being upon the bill in this case, he was not entitled to the benefit of the principle, that each party is entitled to an entire day for the purpose of giving notice.

" The putting of a letter into the post office, giving the notice, is sufficient, without proof of its having been actually received, and if the party to be affected with the notice, reside in a different place from the holder, the notice may be sent through the post office, to the post office nearest the party entitled to such notice;" 1 *Wheat.* 298. *Bank of Columbia* vs. *Magruder*, 6 *Harr. and Johns.* 181.   According to the admission of the parties, it appears, that the mail left *Washington* city early in the morning, and arrived in *Baltimore*, at an early hour the same afternoon.   In legal presumption, the notice must have reached *Payson & Co.* on the 7th February, who were legally bound to deliver notice to *Green* on the following day.   This not having been done, we are of opinion, that the court below were right, in the opinion expressed by them in the second exception, and affirm their judgment.

JUDGMENT AFFIRMED.