## FREDERICK BELL *vs.* THE HAGERSTOWN BANK.—*December* 1848.

A draft was regularly protested for non-payment, in *Georgetown, D. C.,* and the usual notices to the drawer and endorsers, deposited in the P. O., the same evening, by the *notary*, directed, under cover, to *B*, the cashier of the appellee in *Hagerstown*. It was then proved by B, that he had a distinct recollection of receiving these notices, and is sure that, on the same day, he sealed and directed them to the drawer and endorsers, at their respective post offices. He does not recollect the exact time of their receipt, but remembers no instance where such notices were not received in due time, *i. e.*, on the second day after their date, and should have remembered an instance of longer delay as unusual. That the bank has a regularly appointed messenger, whose duty and practice it is to come to the bank daily, about the hour of closing, when he either delivers to him all letters and notices for the P. O., or, when he leaves before the messenger arrives, places such letters carefully on his table, and there is a general understanding that the messenger is to take them. He cannot say which course was adopted in this instance, but did not find the notices on his table next morning, and has never so found them. By the *teller* of the bank, that it is his practice, when the cashier leaves before the messenger arrives, to see that the letters are taken by the latter,—is very particular in this respect, and recollects no instance where they were not taken the same day. By the *messenger*, that it was a part of his duty and his invariable custom, to be at the bank at the hour of closing, or very soon after, to take the letters

Bell *vs.* The Hagerstown Bank.—1848.

and notices to the P. O. He either receives them from the cashier in person, or, if he has left, takes them from his table. Has never failed to obtain them, and it has been his uniform custom to deposit them directly in the P. O., which he has never failed to do, except in one instance particularly described. HELD:

That this evidence of notice of non-payment to the indorser, was legally sufficient to charge him, and to warrant an instruction to the jury that if they believed it, they must find for the plaintiff.

Where the holder and the party to be notified reside in the same place, personal notice is required, or it must be left at his residence or place of business, unless, by the usage of a particular place, a different mode is resorted to.

In large commercial towns the uniform practice now is, to reach the party to be affected with notice, through the post office, when both reside within the limits of the penny-postman, but it must be shown to have been put in, in time to be delivered before the expiration of the day following the dishonor.

Where personal notice is required between parties residing in the same place, it is sufficient if it be made by the expiration of the day following the refusal.

Where the parties reside in different places, notice may be sent through the post office, to the nearest office of the party entitled to notice; and it is sufficient if it be put into the post office at any time during the day the note is payable.

The deposit of a letter in the post office, properly directed, and in proper time, is sufficient to charge the endorser without proof of its having been actually received, and a right of action accrues, without waiting for it to reach its destination.

The usages of banks have grown up to be a part of the settled law of the land, and in obedience thereto, personal notice is dispensed with, and the indorser is charged by the bare deposit of notice in the post office, even if it never comes to hand.

This case is distinguished from the cases of *Flack vs. Green*, 3 *G. & J.*, 474, and *Smedes vs. The Utica Bank*, 20 *Johns.*, 372.

The testimony of the cashier, that he "sealed and directed the notices, both to the drawer and endorser, *at their respective post offices*," must be taken to mean, that he knew the residence of both to be out of the town, and directed accordingly through the proper channel, by which notice would reach them.

Whether due diligence has or has not been used, and whether or not legal notice has been given, are questions of law, to be decided by the court, unless the evidence is doubtful or contradictory.

The possession of the note by the appellees, previously endorsed by them, through the cashier, their agent, and produced by them as their cause of action, is *prima facie* evidence of property in them, and they are to be regarded as the *bona fide* owners, notwithstanding the subsequent endorsements, and entitled to sue upon it.

It is no objection that the endorsement is in blank. The act of 1825, ch. 35, dispenses with the form of filling up the blank, so far as to sustain the judgment upon any negotiable instrument, notwithstanding the omission to fill up the blank in the endorsement.

APPEAL from *Washington* county court.

This was an action of *assumpsit*, brought by the appellees, as holders, against the appellant, as endorser of the following bill of exchange:

"$500.

HAGERSTOWN, *July 23rd*, 1844.

Ninety days after date, pay to the order of *Samuel Bell*, five hundred dollars, value received, which place to account of—                          DAVID BELL.

To GEO. WATERS, *Georgetown, D. C.*

Endorsed: *Samuel Bell, Fred'k Bell.*

Pay to *A. Suter, Esq.*, or order.

ELIE BEATTY, Cash."

At the trial, the plaintiffs proved by competent testimony, the handwriting of the drawer and endorsers, the endorsement by the defendant and delivery to plaintiffs, and then produced in evidence the following protest for *non-payment*.

"UNITED STATES OF AMERICA, DISTRICT OF COLUMBIA, *Washington county, to wit:*

On this, the twenty-fourth of October, in the year of our Lord, eighteen hundred and forty-four, at the request of the president, directors of the *Farmers and Mechanics Bank of Georgetown, D. C.*, bearers of the original draft, whereof a true copy is above written, I, *George Jewell*, notary public, duly commissioned and qualified, residing in the *Corporation of Georgetown*, in the district aforesaid, presented the said draft at the counting house of *George Waters*, and demanded payment thereof. I was answered by him, that he 'had no funds in hand to pay it.' Wherefore I, the said notary, at the request aforesaid, have protested, and by these presents do solemnly protest, as well against the drawer and endorsers of the said draft, as all others whom it may concern, for exchange, re-exchange, and all costs and charges, damages and interests, suffered and to be suffered for the want of payment of the said

draft. Thus done and protested at *Georgetown* aforesaid, and on the same day, I addressed written notices to the drawers and endorsers of the said draft, informing them that it had not been paid by the drawer thereof, and that they would be held responsible for its payment, and directed to *Elie Beatty, Esq.*, cashier, *Hagerstown, Md.*, and deposited in the post office, *Georgetown*, on the same day. In testimony whereof, I have hereunto set my hand and affixed my seal notarial, the day and year aforesaid. (Seal.) Geo. Jewell, N. P. Prot., $1.75.''

Also the evidence of *George Jewell*, taken under a commission in *Georgetown, D. C.*, who testified, that he was a notary public for the *District of Columbia*, duly commissioned and qualified, and was appointed in January 1842. That he had seen the draft referred to twice before, once on the 14th of October 1844, when it was put into his hands, as a notary public, by the *Farmers and Mechanics Bank of Georgetown*, for the purpose of presenting the same to the said *George Waters*, for his acceptance, and to note it for non-acceptance, if acceptance was refused, and again on the 24th of October 1844, when it was again put into his hands for presentation for payment. That on said 24th of October 1844, he presented said draft to said *George Waters* at his counting house, and demanded payment thereof, when he was answered by said *Waters*, that he had no funds in hand to pay; whereupon he protested the same for non-payment, and wrote separate notices to the drawer, *D. Bell*, and to each of the endorsers, *F. Bell, Samuel Bell*, and *Elie Beatty*, cashier, informing them that it had not been paid, and that they would be held accountable to the holders thereof, and enclosed the same under cover, directed to *Elie Beatty*, cashier, *Hagerstown*, and deposited them in the post office in *Georgetown* the same evening, and returned the draft, with protest, to the *Farmers and Mechanics Bank*, at whose request it was protested. The witness further proved, that on the 14th of October 1844, he presented the draft to *Waters* for acceptance, which was refused, which refusal witness noted on the face of the draft, as follows: ''Noted for *N. A.*, October 14th, 1844, by *G. J.*, N.

P.;" and on the same evening, wrote notices to the drawer and each of the endorsers, directed to each of them separately, and enclosed the same to *Elie Beatty*, cashier, *Hagerstown*, and deposited them, on the same day, in the post office at *Georgetown*. These notices were as follows:

"Georgetown, D. C., *Oct. 14th*, 1844.

Take notice, that a draft for five hundred dollars, drawn by *David Bell* on *George Waters*, in favor of *Samuel Bell*, or order, dated *Hagerstown*, July 23rd, 1844, payable ninety days after date, and for which you are accountable to the holders, was this day protested for non-acceptance.

Very respectfully, &c.,

Geo. Jewell, Notary Public.

To Frederick Bell, Esq."

The witness further testified, that he kept a record of his official proceedings, but does not retain a copy of the notices, but knows that the notices hereto annexed, are substantially the same as those enclosed to *Elie Beatty*, cashier.

And to prove that notices of the non-acceptance and non-payment of said draft had been duly sent to the defendant, the plaintiffs offered to prove by *Elie Beatty*, a competent witness, that for many years prior to the date of said draft, he was and still is the cashier of the *Hagerstown Bank;* that as such, it is part of his duty, when notices of the dishonor of a bill are received, to enclose and direct the same to the drawer and endorsers thereof; that notices of dishonor are always, as he believes, put in the post office in *Georgetown*, on the day of their date, and that by the regular running of the mail, they are brought to *Hagerstown* late the next evening, and delivered at said bank next morning; that it has been his invariable practice, to seal and direct the same to the drawers and endorsers the same day he receives them; that he has a distinct recollection of receiving the notices of non-acceptance and non-payment in this case, from the surprise he felt at the draft of such punctual men being protested. And he is very sure that on the same day he received them, he sealed and directed them to the drawers and endorsers, at their respective post offices; that he has no recollection of their date when he received

them, except by reference to the papers themselves. He has no recollection of any instance wherein such notices were not received by him in due course of mail, viz., on the next morning but one after their date, and he is satisfied, that if a longer delay had occurred in this case, he should have noticed and remembered the fact, so unusual, and he is therefore confident, that the notices in this case were received on the morning of the second day after their date. He further proved, that witness does not deposit the notices or letters of the bank in the post office, but that duty is performed by a regularly appointed messenger of the bank, whose duty and practice is, to come to the bank daily, at about the closing hour, when witness sometimes delivers to said messenger all letters and notices prepared that day, to be put in the office by him. That witness sometimes leaves the bank a little earlier or before the messenger arrives, in which case witness leaves the said letters carefully upon his table, and there is a general understanding, that the messenger is to take them to the post office; he cannot remember which was done on the day he received and directed the notices in question, but he remembers directing them properly, and he did not find them upon his table next morning, nor has any instance ever occurred of finding such letters or notices on his table the next morning, nor has he heard of any instance in which they were not, as he believes, put in the office the same day. The plaintiffs further offered to prove by *William M. Marshall*, a competent witness, that at the date of said draft, and for many years before, he was and still is the teller in said bank; that said bank has been closed daily at two o'clock, and the cashier leaves generally about that hour, but that witness and the book-keeper remain sometime afterwards, to settle and adjust the accounts of the day; that when the cashier leaves the bank, before the messenger arrives for the letters, it is and has been the usual practice of witness, to see that the same are taken by the messenger, and witness generally sees them taken away, or the messenger generally takes them from the table whilst witness is in the bank; that for the last few years witness has been exceedingly particular in this respect, because, during that time, there have been almost daily

remittances of money by mail, and it was therefore necessary to be careful that letters were delivered to the messenger; and witness has no recollection of any instance of the letters and notices prepared during the day, which were not taken from the bank to be put in post office on the same day. The plaintiffs further offered to prove by *John Anderson*, a competent witness, that from a period long anterior to the date of the draft in question, he has been the messenger of the said bank, duly appointed by the president and directors; that as part of his duty, it is and has been his invariable custom and practice, to be at the bank at the hour of its closing, or very soon afterwards, sometimes an hour afterwards, to take the letters and notices of the bank to the post office; that sometimes he receives them from the cashier in person, or, if he has left the bank, from the cashier's table, where they are found laid, one or the other; that he so takes them before the other officers have left the bank, and in their presence, and he has no recollection of any failure so to obtain them, and it has been his uniform custom, to deposite them directly in the post office; that he has never failed to put them in the office the same day; once, however, about six months ago, there was a letter to one of the *Baltimore* banks, (as he thinks,) which was not ready at the usual time, and being delivered to him later in the day, he neglected to put it in the office until next morning; he has no particular recollection of the notices in question, but is very sure, that if delivered to him or found upon the cashier's table, as aforesaid, he deposited them in the office the same day, and he remembers seeing the name of the defendant and other *Bells* on some letters so put in the office, he thinks perhaps two years ago, and since that time and before, but cannot tell at what time; that notices of protest are folded and sealed differently from letters, and he never failed to deliver such in the office the same day. To the foregoing evidence the defendant objected, as being incompetent and inadmissible to prove, that notice of the non-payment of the said draft was received by or given to the defendant, but the court overruled the objection and permitted the said evidence to be given to the jury, and thereupon instructed the jury, that said testimony

was evidence to prove, that notice of non-payment of said draft was given to the defendant in due time, and if they believed the said evidence, their verdict must be for the plaintiff. The defendant excepted and appealed to this court.

The cause was argued before DORSEY, C. J., SPENCE and FRICK, J.

By JERVIS SPENCER for the appellant, and
By J. DIXON ROMAN for the appellees.

FRICK, J., delivered the opinion of this court.

This action was brought against the appellant, as the endorser of a bill of exchange, of which the following is a copy:
"$500.

HAGERSTOWN, *July 23d*, 1844.

Ninety days after date, pay to the order of *Samuel Bell*, five hundred dollars, value received, which place to account of— DAVID BELL.

To GEORGE WATERS, *Georgetown, D. C.*
Endorsed: *Samuel Bell, Frederick Bell.*
Pay to *A. Suter, Esq.*, or order.

ELIE BEATTY, Cashier."

The note thus in the possession of the *Hagerstown Bank*, of which *Elie Beatty* was the cashier, had been transmitted to said *Suter*, to be collected through the agency of the *Farmers and Mechanics Bank of Georgetown.* It was there regularly protested, for non-payment at maturity; whereupon the notary addressed separate notices to the drawer, and to each of the endorsers, informing them, that it had not been paid, and they would be held accountable to the holders; and enclosed the notices directed under cover, to "*Elie Beatty*, cashier, *Hagerstown*," and deposited them in the post office, in *Georgetown*, the same evening.

The appellee then proved by said *Beatty*, the cashier, that he had a distinct recollection of receiving these notices; and is very sure, that on the same day he sealed and directed them to the drawers and endorsers, at their respective post offices. That he had no distinct recollection of the date when he

received them, except by reference to the papers themselves; nor of any instance, wherein such notices were not received by him in due course of mail; and is confident these notices were received in time, that is, on the second day after their date, because he should have noticed and remembered the fact of a longer delay, as unusual. That the bank has a regularly appointed messenger, whose duty and practice it is, to come to bank daily, about the closing hour, when sometimes, he delivers to him all letters and notices for the post office, and sometimes, when he leaves the bank before the messenger arrives, he places such letters carefully on his table, and there is a general understanding, that the messenger is to take them to the post office. He cannot remember which course was adopted on this occasion. He did not, however, find the notices on his table the next morning; nor has an instance ever occurred of so finding them.

He further proved by the teller of the bank, that when the cashier leaves the bank, before the messenger arrives, it is his practice to see that letters are taken by the messenger, and he generally sees it done, or the messenger takes the letters himself from the table. That he has been exceedingly particular in this respect, and has no recollection of an instance, when they were not taken from the bank on the same day.

He further proved by *Anderson*, that he was the appointed messenger of the bank. As part of his duty, it has been his invariable custom and practice, to be at the bank, at the hour of closing, or very soon after, to take the letters and notices to the post office. That sometimes he receives them from the cashier in person, or if he has left the bank, takes them from the cashier's table, one or the other. That he has no recollection of any failure so to obtain them; and it has been his uniform custom to deposite them directly in the post office. That he has never failed to put them in, on the same day; except on one occasion, when a letter to one of the *Baltimore* banks, was delivered to him later in the day, it was neglected by him until next morning.

To this evidence, the defendant objected, as being incompetent, and inadmissible to prove, that notice of the non-payment

of the said draft was received by, or given to the defendant. But the court overruled the objection, and permitted the evidence to be given to the jury, and instructed them, "that said testimony was evidence to prove, that notice of the non-payment of said draft was given to defendant in due time; and if they believed the said evidence, their verdict must be for the plaintiff." And upon exception to this instruction, the case comes before this court for revision.

The question here presented is, was the evidence of the notice of the non-payment of the note, upon which this suit was brought, legally sufficient to charge the endorser, and to warrant the instruction to the jury, that if they believed it, they must find for the plaintiffs.

To arrive at the proper answer to this enquiry, it is necessary first to recur to what is deemed a legal and sufficient notice, within the authorities that control this branch of commercial law. It has now become text law, so often affirmed by reiterated decisions, that it is only requisite for the present purpose to state it in brief.

Demand and notice are conditions precedent to every holder's right to recover, and the endorser is entitled to strict notice. Wherever the holder of the bill, and the party to be notified, reside in the same place, personal notice is required, or notice must be left at his residence or place of business; (*Smith's Merc. Law* 251; 15 *Maine Rep.*, 141,) unless by the usage of a particular place, a different mode of notice is resorted to. As in large commercial towns, it is now the uniform practice, to reach the party to be affected by the notice through the post office, when the parties both reside within the limits of the penny-postman. "But it must be shewn to have been put in, time enough to be delivered before the expiration of the day following the dishonor." *Smith's Merc. L.*, 250, and cited 4 *Tyrwh.*, 1002, in note *(y.)* The particular custom of the place is made to decide the question. 1 *H. & J.*, 427. *Bank of U. S. vs. Norwood.* And in these cases, where personal notice is required between parties residing in the same place, it is sufficient, if made by the expiration of the day following the refusal. *Smith's Merc. Law*, 250, and cases there cited. When

the party to be charged by the notice resides in a different place from the holder, notice may then be sent through the post office, to the nearest office of the party entitled to the notice. *Bank of Columbia vs. Magruder*, 6 *H. & J.*, 181. 1 *Wheat.*, 298. And it is sufficient if the notice of non-payment is put into the post office at any time during the day the same is payable. *Chitty, (8th ed'n,)* 514, 515. The deposit of a letter in the post office, properly directed and in proper time, is sufficient to charge the endorser, without proof of its having been actually received. *Saunderson vs. Judge*, in 2 *H'y Bl.*, 509, is the earliest case affirming the doctrine, and it has ever since been adhered to. It is in itself a plain rule, and it has always been considered unsafe to depart from it. See also 6 *Taunt.*, 305. 17 *East.*, 385. 6 *H. & J.*, 181. It is now so well settled, that a right of action accrues thereon, without waiting for the notice to reach its destination. 15 *Maine*, 67. 3 *Pick.*, 414. 4 *Greenl. R.*, 479.

In the case before the court, there is no difficulty in assuming, that if the letter was put into the post office, it was done on the same day that the notices reached *Hagerstown*, and was consequently in due time. Nor can we entertain a doubt, that the evidence in the cause is legally sufficient to establish the fact of its having been done. What evidence, short of the actual manual deposit of this notice in the post office, can be given more directly to the point? Is not the whole of it, taken together, fully equivalent to the establishment of that fact? If the messenger of the bank had gone one step further, and sworn to the fact as within his recollection, (without some special circumstance to charge his memory with the fact,) would it be credited? That among the notices which he delivered daily throughout the year, and which indicated nothing to him beyond the external address, nothing to attract his special attention, he should have recollected this one in particular? The practise to which he testifies, must render it next to impossible, that he should have such distinct recollection of each notice in particular. And yet nothing short of this is required, if such evidence is rejected as doubtful. Looking to this practice, (and the numerous cases in the books, sanction it as the uni-

form practice of all banks,) is not testimony of this character the best that the nature of the case admits of? The business of banking is a distinct operation in commerce, recognized in almost every State in the Union, by the incorporation of banks; and their usages have grown up as a part of the settled law of the land. In obedience to this usage, it is that the law dispenses with personal notice, and charges the endorser by the bare deposit of the notice in the post office, if in due time, even if the notice never comes to hand. The importance of fixed and uniform rules in reference to mercantile dealings, has converted usage into law. It is adapted to expedite commercial and banking operations. Any rule, less liberal, would embarrass them.

The rule, however, it is said, must be strictly complied with; reasonable and due diligence must be proved in order to charge the endorser. We regard the evidence in this cause as a sufficient compliance with the rule. The course and practice of the bank, as proved, is entirely consistent with what the law requires. The notice was received at the bank in time. It was enclosed and directed by the cashier to the proper post office in time, and then delivered to the messenger, or laid upon the cashier's table. Such is the purport and legal effect of the cashier's testimony. Equally so, is the effect of the testimony from the messenger, that he received this notice from the cashier, or took it from his table, and deposited it on the same day in the post office. If he never omitted to do so, there could be no omission in this instance. From the practice to which he testifies, he would be the more likely to recollect an omission, if it did occur; and if, as he swears, there was no omission in any instance, (save the one to which he refers,) it may be said to be affirmatively proved, that there was none in this. The usage of the bank, seems to have been characterized by accuracy and certainty, to attain its object, and the evidence leaves no room to doubt, but that the notice reached the office. In the absence of all contradictory testimony, the fact, that this notice was properly disposed of by the messenger, seems to be irresistable. It is not in the nature of things, from this course of business in the bank, sanctioned by law and usage, to prove

more.   And to ask the witness, under the circumstances, to bring his recollection to bear upon the particular notice here in question, is to require too much.

The case of *Flack and Green*, 3 *G. & J.*, 474, so strongly urged in favor of the appellant, is easily distinguished from the case at bar.   The letter containing the notices had been mailed at *Washington* in due time, and addressed to the house of *Payson & Co.*, in *Baltimore;* and it was proposed to prove by the witness, one of the firm, "that it was the invariable practice of that house to forward such notices immediately on the receipt of them, and that he had no doubt, from the course of their business, that they had forwarded this particular notice, but that he had no recollection upon the subject of forwarding it.   That from the general course of their business, and from the particular custom of their counting house, in respect to such notices, he believes that the notice in question had been duly transmitted."   And similar testimony was offered from the clerks of the house, but it was all properly rejected by the court.   And although no reason is assigned, yet it was manifestly too loose and vague to raise the presumption it was intended to convey.   Time, the essential ingredient in the notice, is indefinite.   It does not appear when the letter was received by the house, or how soon after it, the notice, was forwarded to the endorser.   It does not prove, through what channel or direction, by whom or whose business it was among the partners and clerks of the house, to see it expedited, and whether it was forwarded by mail or personal message.   There is nothing in the evidence to warrant a legal inference, that it was the particular duty of any one of the firm or the clerks, to see that a proper direction was given to the notice, by which it might reach the endorser.   Strict notice, as was said, is required to charge the endorser.   In most instances it may be through the post office; in others, it is essential that it should be personal. In this case the evidence was altogether too indefinite to gratify the requirements of the law, and the court very properly rejected it.

The case cited from *20th Johns.*, 372, *Smedes vs. Utica Bank*, is likewise to be distinguished from the case at bar.

There all the parties *resided in the same town*, and the testimony of the witness is, "that he delivered a notice, either at the post office or at the office of the party, but which of the two he could not tell." Here it will be perceived, in the language of the court, on page 383, "the notice in one place would be sufficient, in the other a nullity." On the ground, therefore, that the party was entitled to personal notice, and the proof being equivocal, the testimony was rejected.

On the contrary, in the case of *Warren vs. Gilman*, 17 *Maine R.*, 360, where the bill was drawn by residents of *Bangor*, made payable in *Boston*, being endorsed to a bank in *Bangor*, it was transmitted to *Boston*, and there presented for payment and dishonoured, and the notices thereof transmitted to *Bangor* by the notary, by the first mail; the cashier of the bank testified, "that on the receipt of them, which was in due time, he directed one of the notices to the endorser, and either gave it to him in person, on the same morning of receiving it, or put it into the post office in *Bangor*, on that same morning;" the court determined, that it was notice to charge the defendant: because, as said, "in this case *either mode* was sufficient. If delivered to him in person, there could be no question; and we are of opinion, that the notice coming from the notary, the post office was a proper channel of communication," the notary residing in a different place from the party charged by the notice.

In this connection, it may be the proper place to notice the objection taken by the appellant's counsel, that as the fact of the residence of the endorser does not appear upon the record, it must be presumed to conform to the note, which is dated at *Hagerstown*, and consequently the notice should have been personal, or left at his dwelling. Assuming the law, however, to be as stated in this latter case, and the notices here under consideration having been transmitted by the notary from *Georgetown*, *either notice* would be sufficient. If the appellant had actually resided in *Hagerstown*, the notice, originating with the notary in *Georgetown*, from the dishonour of the bill there, was, by the rule in the above case, sufficient to satisfy the law, if put into the post office.

But the true answer to this objection, properly appears in the testimony of the cashier, where it is said, he "sealed and directed the notices, both to the drawer and endorser, *at their respective post offices*," and this must be taken to mean, that he knew the residence of both to be out of the town, and directed to them accordingly through the proper channel, by which notice would reach them.

We find the case in 4 *Alabama Rep.*, 590, *Ball vs. Bank of Alabama*, a nearer parallel to the case before us. There the cashier testified, "that in due course of mail, he received a package containing a hundred or more protests; that he had no distinct recollection of the one in question, but does not doubt it was regularly received; and that notices were enclosed, addressed and mailed, *on the same day*, to the endorsers, as was his constant practice. If he had received the protest under circumstances indicating that it had not been transmitted in due season, it would have been noted according to the invariable practice of doing business in the bank." The court here observe, "the facts stated are quite convincing, and inconsistent with the idea that notice was not duly received by the plaintiff, and addressed and mailed in due season to the defendant," &c.

Another case, to be found in 4 *Alab. R.*, 148, is there referred to, under like evidence and circumstances, to which we merely refer, with a view to an extract from the opinion of the court, having some application and analogy to the case now before us. In reference to this practice of banks, it is there said : "Such a course of business, if pursued, would have furnished sufficient evidence for the presumption, that what was usual to be done in all cases, was not omitted in the particular one. This is the usual course of evidence by a large class of persons, such as public officers, notaries and clerks. Where the business performed by them is of great extent, it is highly improbable, from the nature of things, that any precise remembrance shall exist of one fact, which has nothing to distinguish it from a multitude of others of the same nature,—hence it is, that evidence of this general character is admissible."

Another objection, upon which great stress has been laid by the counsel for the appellant, is, that the court erred in taking

the testimony from the consideration of the jury, by the positive instruction, that if they believed the evidence they must find for the plaintiff. Upon a careful examination of the authorities, however, we think there is no error in this instruction of the court, and they have not invaded the province of the jury. It is conceived of primary importance in all commercial transactions, that fixed and settled principles should prevail. In no branch of the mercantile law is it more necessary that uniform rules of decision should be established, than in the one now under consideration. And in the case of *Ransom vs. Mack*, 2 *Hill*, 595, it is justly remarked by the court: "If such questions are to be submitted to a jury, a party may be discharged to-day, and be made liable to-morrow upon the very same state of facts."

It is therefore now the settled doctrine, that due diligence and notice is a question of law. When all the facts are ascertained, this question of liability is to be settled by the court. "The enquiry is not what inferences the jury may draw, but what testimony does the law require." 20*th Johns.*, 383, before cited.

Nothing short of clear proof of notice can fix the liability of the endorser. He is entitled to this protection, but he must take it from the court, as the least liable to render this protection doubtful or fluctuating. Therefore, whether due diligence has or has not been used, and whether or not legal notice has been given, are questions of law to be decided by the court, unless the evidence is doubtful or contradictory. It is only in such cases that the jury are called upon to decide. The principle is found distinctly stated in numerous cases. "When all the facts are ascertained, and there is no controversy about them, diligence is a question of law." 15 *Maine R.*, 263. *Thorne vs. Rice*, 3 *Hill*, 520. "What is reasonable notice is a question of law, upon the facts proved." 17 *John's R.*, 453. "This results," says *Spencer, J.*, in *Bryden vs. Bryden*, 11*th Johns.*, 187, "from the necessity of having some fixed legal standard, by which men may not only know the law, but be protected by it."

The result of all the authorities examined is, that the law requires of every holder of negotiable paper, reasonable diligence in conveying to the party to be charged notice of the dishonor of the bill; and where there is no dispute about the facts adduced in evidence, whether such diligence has or has not been used, is a question of law for the court.

In further support of the doctrine, we quote from the language of the Supreme Court, in the case of the *Bank of U. S. vs. Corcoran*, 2 *Pet.*, 134: "If this was a question of inference fit to be submitted to the discretion of the jury, it seems to the court, that the rules respecting this subject, which have been laid down with so much care, would no longer be fixed and certain, but would change with the varying conclusions which a jury might draw of the fact, from evidence, however slight, given to prove it." And in a more recent case in that court, reported in 2nd *How.*, 457, *Rhett vs. Poe*, it is said, upon page 481: "It is a doctrine generally received, one which is recognized by this court in the case of the *Bank of Columbia vs. Lawrence*, 1 *Pet.*, 578, that whenever the facts upon which the question of due diligence arises, are ascertained and undisputed, due diligence becomes a question of law." See also 21 *Wendell*, 643.

We may here safely close this array of authorities by a reference to the rule on this subject, long ago announced in our own State, in 1 *H. & J.*, 187, *Philips vs. McCurdy*, "that notice of the non-acceptance and protest of a foreign bill of exchange must be given in due and convenient time, of which the court are to judge." And in the same volume, on page 477, in the case of *Patton and Jones, vs. Wilmot*, the rule is repeated: "That it is the province of the court to determine, whether or not due diligence has been used."

There is no force in another objection of the appellant, that the appellees have no such interest in the note in question, as to entitle them to recover in this action. The possession of the note, previously endorsed by them, through the cashier, their agent, and produced by them as their cause of action, is *prima facie* evidence of property in them. It has the endorsement of *Elie Beatty*, not in his own name, but in his character

of cashier, as the proper officer of the bank, in whose name such evidences of property are received and transferred. And they are to be regarded as the *bona fide* owners, notwithstanding the subsequent endorsements, and entitled to sue upon it. 1 *G. & J.*, 175, *Bowie vs. Duvall.* It is no objection that the endorsement is in blank. Since the decision on this point, in the *Cumberland Bank vs. McKinley*, 6 *H. & J.*, 527, affirming this doctrine, the act of 1825, ch. 35, dispenses with the form of filling up the blank, so far as to sustain the judgment given upon any negotiable instrument, notwithstanding the omission to fill up the blank in the endorsement.

Upon the whole case, then, the facts being deemed by this court sufficient to establish due diligence, in the absence of all doubtful or contradictory testimony, we are of opinion, that the court below were right in taking the question into their own hands, and instructing the jury, that if they believed the facts, they must find the verdict as directed by the court. The judgment of the court below is therefore affirmed.

JUDGMENT AFFIRMED.