(Decided January 12th, 1860.)

---

# W. R. BRAILSFORD *vs.* JOHN WILLIAMS and JOHN A. HODGEWERF.

In an action by the endorsee against the drawer of a bill of exchange, notice of the dishonor of the bill, in due time, from the *acceptor* to the drawer, is sufficient to bind the latter.

Notice, by any person who is a party to the bill, or who would, on its being returned to him, and after payment, be entitled to require reinbursement, enures to the benefit of all antecedent parties, but a stranger to the bill cannot give the notice.

A *letter-press copy* of a letter from the acceptor to the drawer, conveying intelligence of the dishonor of the bill, is admissible in evidence and sufficient, notwithstanding a *blank* therein, the omitted part not appearing to have any connection with the fact of non-payment and notice, except as an excuse for the writer's failure to pay it.

In regard to the mailing of a letter, containing notice of dishonor, a witness (the acceptor) proved that he wrote the letter on the day of the maturity of the bill, but cannot recollect that it was mailed on that day, nor does he know whether it was mailed at all; that the *custom in his office* is, to write the letters of the house and leave them on his desk for his clerk to deposit in the post office. HELD:

Brailsford *vs.* Williams & Son.

That this was not sufficient evidence of the mailing of the letter; compliance with the custom was not fully proven; the clerk whose duty it was to put the letters in the post office should have been called or his absence accounted for.

The same rules which apply to banks in regard to the custom of mailing letters, and the proof of such custom, apply also to commercial houses.

Appeal from the Superior Court of Baltimore city.

This suit was brought on the 1st of January 1857, by the appellees, trading under the firm of John Williams & Son, as endorsees and holders, against the appellant as drawer, of a bill of exchange for $1800.92, at thirty days, dated Charleston, S. C., June 22nd, 1854, in favor of Williams, Butler & Co., upon S. D. Tonge & Co., Baltimore Maryland, and by said Williams, Butler & Co., endorsed to the plaintiffs. It was *accepted* by the drawees, and at its maturity was protested for non-payment, the protest stating in regard to notice, "and on the same day I addressed written notices to the drawer and endorsers of said bill of exchange, informing them it had not been paid, payment therefor having been demanded and refused, and that they would be held responsible for the payment thereof. Which notices I left at the place of business of John H. Williams & Son." The defendant pleaded *non assumpsit.*

*1st. Exception.* The plaintiffs offered in evidence the draft and protest, the handwriting of all the parties to the draft having been admitted. They then offered to prove by S. D. Tonge, the acceptor of the draft, that on the day of the protest he wrote a letter, the copy of which is in his letter book, and offered the same in evidence, as follows:

"*Baltimore, July 25th,* 1854.

Mr. W. R. Brailsford, Charleston.

D'r Sir,—We regret very much to inform you that we have been compelled, owing to the prolonged pressure of the times, and the embarrassment of our friend whose name was on our paper to some extent, to suspend payment. Our acceptance of your draft for $1500, due this day, is the second note maturing since this dilemma was forced upon us, and it is with very great pain, that, from our inability to meet it, the

same should go back upon you, ———— it here; but foun d it impossible to do so. Messrs. Jno. Williams & Sons, who hold this paper, have taken it out of bank, and have had it privately protested to hold the parties, so that the matter will not be public. From them it will be returned to Messrs. Williams & Son.

"Under any reasonable state of circumstances we have abundant resources to meet our liabilities, but these resources are in our factory property; and not in money, which seems now the most wanted and only available thing.

"We shall ask an extension of our creditors for twelve months, adding interest, but are afraid that this draft; and our draft on you, due 19th Aug., for $562.38, may be inconvenient to you, and if it is in our power we will do whatever can be done that you may not be embarrassed. Most of the parties here who hold our paper can give us the time without much inconvenience.

"We had intended paying part of this draft, asking a receipt on account of it, but upon reflection we concluded it would be more important to you to apply all the means we have towards the placing you in funds for your acceptance above named, of $562.38, and as it is also held by same parties. Please let us hear from you as to how you would best like to have them aranged:

Yours, respectfully;    S. D. Tonge & Co."

In reference to the *blank;* in the first paragraph of the above letter, the record states: "This is from a *press-copy* and no impression is made of the words that should fill this blank."

The defendant objected to the admissibility in evidence of the above copy of the letter, which objection the court (Lee, J.) overruled, and to this ruling the defendant excepted.

*2nd. Exception:* The plaintiffs then proved by Tonge, the witness, that he wrote this letter to the defendant upon the day of the maturity of the bill of exchange; but cannot recollect that it was mailed by him, nor does he know whether it was mailed at all; that the custom in his office is to write the letters of the house and leave them in his desk for his

Brailsford *vs.* Williams & Son.

clerk to deposit in the post-office; that he had correspondence with him and conversation in reference to the non-payment of the drafts, and that Brailsford never complained to him that he had no notice of protest and non-payment. The defendant then asked the following instructions to the jury:

1st. That there is no legal evidence of notice to the defendant, of demand upon and non-payment of the draft in this case, shown by the protest offered in evidence by the plaintiffs.

2nd. That there is no sufficient evidence of notice of demand and non-payment given by the plaintiffs to the defendant, which will entitle them to recover in this action.

3rd. That the jury must find, from the evidence, that the plaintiffs forwarded the notice of demand and non-payment to Williams & Butler, the endorsers, at Charleston, upon the day following the maturity and protest of said draft, and that by the day succeeding the receipt of said notice, the said Williams & Butler communicated to the defendant the notice of demand upon, and non-payment by, the acceptor.

4th. That the burthen of proof is upon the plaintiffs to show that notice was given to the defendant of the demand upon and non-payment of said draft by the acceptor, and that said notice was duly transmitted from the endorsees or their authorized agent to the endorsers at Charleston, by mail, or by a mode as expeditious, and that they communicated the same to the defendant within one day after the arrival of such notice in Charleston, or that the notice was forwarded to the defendant by the plaintiffs or their agent by the mail of the day next succeeding the protest of said draft.

5th. That the plaintiffs are not entitled to recover upon the pleadings in this case.

The court granted the first prayer and rejected all the others. To this rejection of his prayers the defendant excepted, and the the verdict and judgment being against him, appealed.

The cause was argued before LE GRAND. C. J., ECCLESTON and TUCK, J.

20    v.15

*Jas. Malcolm,* for the appellant, argued:

1st. That the court below erred in admitting the witness, Tonge, the acceptor of the draft, to testify in regard to the letter written by him to the appellant, the drawer of the draft, in relation to its dishonor, and also in permitting the copy of said letter, without notice to produce the original, and mutilated, as it appears, by the blank left in it, to have been, to be read to the jury as evidence. 1st. Because Tonge was not the *agent* of the endorsee, the holder, to inform the acceptor of the dishonor of the draft; and 2nd, because, having written without authority, his letter was not evidence. 8 *Wheat.*, 326, *Nicholls vs. Webb.* 11 *Wheat.*, 431, *Mills vs. Bank of U. S.* 6 *Md. Rep.*, 10 *Atwell vs. Miller. Smith's Mercantile Law*, 304, 305.

2nd. That the notice must come from the holder, or his agent, and not from a mere stranger, and though this rule is qualified to the extent that the notice will be sufficient if it comes from *a party to the bill*, yet this qualification is limited in this particular, viz., the notice must come from some party to the bill, who can, by receiving payment from the party notified, give him an immediate remedy on the bill. The *acceptor* does not hold the bill and cannot give such remedy, and notice from him is, therefore, insufficient. 2 *Camp.*, 177, *Stewart vs. Kennett. Story on Bills,* sec. 304, note 3. *Byles on Bills,* 163, in 16 *Law Lib.* 3 *Wend.*, 179, *Chanvine vs. Fowler.* 14 *Mass.*, 116, *Stanton vs. Blossom.* 15 *Mees. & Wells,* 234, *Harrison vs. Ruscoe.* 3 *Adol. & Ellis,* 193, *Chapman vs. Keane.*

3rd. That even if the copy of the letter from Tonge is evidence, there is no proof of its ever having been mailed. The witness proves that *he had no recollection that the letter was mailed by him, or that it was mailed at all.* And, although he proves it was the custom of his clerk to mail letters from his office, there is no proof, *by the clerk,* that he mailed the letter referred to, the clerk not having been examined. 3 *G. & J.*, 474, *Flack vs. Green.*

4th. That the court erred in rejecting the prayers of the defendant, because there was no legal notice given to him of

Brailsford *vs.* Williams & Son.

demand and non-payment by the acceptor; the burthen of proof was on the plaintiffs, to show that notice was given in due course of mail to the defendant, or if given to the endorsees by them, that notice of it was given by the endorsers to the defendant the day after the receipt of such notice. 1 *Gill*, 127, *Whiteford vs. Burckmyer & Adams. Story on Bills,* secs. 382, 383. *Byles on Bills,* 214, 219, 353, 354. 9 *Grattan*, 31, *Friend vs. Wilkinson & Hunt.*

*St. Geo. W. Teackle*, for the appellees, argued:

1st. That *any party* to a bill may give the notice, and it has been expressly decided that an *acceptor* may do it. The rule, as stated by Judge Story, is this: "The notice will be sufficient, although not given by the holder, or his agent, if it comes from some person who holds the bill when it is dishonored, *or* who is a party to the bill, *or* who would, on the same being returned to him, and after paying it, be entitled to require reimbursement thereof." *Story on Bills, sec.* 404. *Chitty on Bills,* 527, and *cases* there cited.

2nd. The *press-copy* of the letter from this acceptor was admissible in evidence. The rule of evidence that excludes a *copy* is because there is *better evidence* behind, but in this case there could be no better evidence than a *press-copy*—it is in fact a *duplicate-original.*

3rd. The defendant's second prayer was properly refused. If it refers to the protest, the defendant had the benefit of it by the granting of his *first* prayer. If it refers to the proof of mailing the letter, it could not be granted, for the court could not say there was *no sufficient* evidence of notice, if there was *any evidence* tending to show that fact. The *custom* of the commercial house in which the letter was written was evidence from which the jury might infer that the letter was duly mailed. 7 *Gill*, 216, *Bell vs. Hagerstown Bank.* Again, the fact, as testified to by Tonge, that he had correspondence and conversations with the defendant in reference to the non-payment of this draft, and that the defendant never complained that he had no notice of its dishonor, is

evidence from which the jury might infer he had received such notice, and especially that he had received the letter informing him of the protest. There can be no valid objection to the letter by reason of the *blank* in it; for it certainly gave him notice that the draft had not been paid, and had been protested.

4th. The *third* and *fourth* prayers of the defendant, if objectionable on no other ground, were certainly properly rejected for the reason that they require the jury to find notice *by mail*, as the *only mode* in which notice could be given. This is not law, for there are other modes of giving notice than by mail.

Tuck, J., delivered the opinion of this court.

This is an action of *assumpsit* by the endorsee against the drawer of a bill of exchange. The questions for consideration relate to the notice of dishonor of the bill; and these are: 1st, whether such notice, if in due time, from the acceptor to the drawer, binds the latter in an action against him? 2nd, whether the letter in this case is not sufficient, notwithstanding the imperfections of the copy? 3rd, whether there is evidence that the letter was mailed?

Treating the first of these propositions with reference to the purposes for which the law requires notice to parties to bills of exchange, there would seem to be no reason to doubt the sufficiency of notice from the acceptor. A prudent man would need no more authoritative information than a letter from the party, primarily liable, that, being due and payment demanded, the bill had been dishonored. It was once held that no party could give a valid notice, unless he was the holder at time. *Tindal vs. Brown*, 1 *Term Rep.*, 167. But this doctrine after having been followed in other cases (*Ex-parte, Barclay*, 7 *Ves.*, 597; *Stewart vs. Kennett*, 2 *Camp.*, 177) was expressly overruled in the case of *Chapman vs. Keane*, 3 *Adol. & Ellis*, 193, (30 *Eng. C. L. Rep.*, 69,) in which most of the previous decisions were reviewed. Nothing can be more emphatic than the language of Lord Denman, in pronouncing judgment. After referring to *Tindal*

*vs. Brown,* and *Ex-parte Barclay,* he says: "Notwithstanding these high authorities, it is clear, from *Jameson vs. Swinton,* 2 *Camp.,* 373; *Wilson vs. Swabey,* 1 *Stark., N. P. C.,* 34; and also from the learned treatises on bills of exchange, that the contrary doctrine has prevailed in the profession, and we must presume a contrary practice in the commercial world. It is universally considered that the party entitled, as holder, to sue upon the bill, may avail himself of notice given in due time by any party to it. ＊ ＊ ＊ We are now compelled to determine whether the case of *Tindal vs. Brown,* as to this point, be good law. We think that it is not." This case has been so generally accepted by the profession, that we may consider the doctrine there announced as the established law. *Chitty on Bills,* 527. *Story on Bills, sec.* 304. *Byles on Bills,* 225. 15 *Mees. & Welsby,* 231.

But it is contended here, that the notice must come from some party to the bill, who can, by receiving payment from the party notified, give him an immediate remedy on the bill, and that, as the acceptor does not hold the bill, and cannot give such remedy, the doctrine of the above case does not apply. It is true that it was so decided in *Stewart vs. Kennett,* 2 *Camp.,* 177, and the same, perhaps, may be inferred from other cases; but, we cannot doubt that all such were virtually overruled by *Chapman vs. Keane;* as well as by other decisions. In *Jameson vs. Swinton,* 2 *Camp.,* 373, where the notice was not given by the holder of the bill, but by his immediate endorser, who had received notice, the court said: "The drawer or endorser is liable to all subsequent endorsers, if he had due notice of the dishonor of the bill from any person who is a party to it. Such a notice must serve all the purposes for which the giving of notice is required. The drawer or endorser is authoritatively informed that the bill is dishonored; he is enabled to take it up, if he pleases, and may immediately proceed against the acceptor or prior endorsers." There is, besides, express authority on the very question before us. In *Shaw vs. Croft, M. S.,* 1793, cited in *Chitty on Bills,* 527, Lord Kenyon held, that notice by the acceptor to the drawer was sufficient; and the

same point was ruled by Lord Ellenborough in *Rosher vs. Kieran*, 4 *Camp.*, 87, where the drawer was notified by a letter from the acceptor, stating, "that he had not been able to pay it, and that it was then in the hands of the plaintiffs." We are not aware that these cases have been expressly overruled, or even questioned, except in 3 *Wendell*, 173, *Channine vs. Fowler*, where the bill had not been accepted, and of course the point could not arise, and, on which it may be observed, that the learned judge, in quoting *Chitty on Bills*, has undoubtedly misstated his doctrine, by using *and* for *or*. (see page 179.)    Park, B., also, in *Harrison vs. Ruscoe*, 15 *Mees. & Welsby*, 231, where the question was not presented in the case before him, said, that the rule as to notice excluded notice given by an acceptor, who never could sue himself on taking up the bill.    He disposes of the cases where the point was presented and expressly decided, by adopting a suggestion in *Bayley on Bills*, ch. 7, sec. 2, that perhaps the acceptor had a special authority to do so.    But the reports of these decisions furnish no pretence for any such supposition. They are express rulings on the very point, without any qualification, and appear to have been recognized by the elementary writers.    From an examination of the question, we are of opinion, that this branch of the law-merchant is correctly stated in *Chitty on Bills*, 527, where it is said: "It suffices if notice be given, after the bill is dishonored, by any person who is a party to the bill, or who would, on the same being returned to him, and after paying it, be entitled to require reimbursement, and such notice will in general enure to the benefit of all the antecedent parties, and render a further notice from any of those parties unnecessary, because it makes no difference who gives the information, since the object of the notice is that the parties may have recourse to the acceptor."    This, however, must be taken with the qualification, elsewhere stated, that a stranger to the bill cannot give the notice.    2 *Camp.*, 177.    Any party may do so, by which is meant, any person whose name appears on the bill. *Flack vs. Green*, 3 *G. & J.*, 474.    It has been also decided (14 *Mass.*, 116) that a drawee who has not accepted cannot notify the parties.*

* Query - Is not a drawee a person whose name appears on the bill?

Upon the second inquiry, we are of opinion, that the letter from the acceptor to the drawer conveyed sufficient intelligence of the dishonor of the bill. The blank is clearly not the result of a design to keep back part of the letter, but owing to some defect in the letter-press copy. The part omitted does not appear to have any connection with the fact of non-payment and notice, except in excuse for the writer's failure to pay the bill. Whether we attempt to supply words for the blank, or treat the copy in evidence as a true transcript of an imperfect letter, received by the defendant with the blank in it, its effect must be the same. It was impossible for the drawer not to have known from it that the bill was unpaid, and that it had been protested by the holder for the purpose of holding the parties liable.

We think, however, that the evidence offered for the purpose of showing that the letter had been mailed, was not legally sufficient. The fact was to be found by the jury from the custom prevailing in the counting-room of the writer; but compliance with the custom had not been fully proved. The person whose duty it was to deposit letters in the post-office should have been called, or his absence accounted for. A similar question arose in *Bell vs. Hagerstown Bank*, 7 *Gill,* 216, where the law was fully discussed. We perceive no sufficient ground for applying different rules to banks and commercial houses. The object here is, to arrive at a particular fact, not by express proof, that the very thing was done, but by a train of circumstances from which the inference of the fact was to be drawn, and we think there ought to be no defect in the chain of evidence. The case of *Flack vs. Green,* 3 *G. & J.,* 474, cannot serve the appellant, as is explained in *Bell vs. Hagerstown Bank*.

It follows, as the result of these views, that the letter was properly admitted in evidence; but, as there was not sufficient proof of its having been sent to the office, the second prayer, which embraces that point, was improperly refused. The ruling of the court below on the third, fourth and fifth prayers, was also correct. The third and fourth required a

mode of transmitting notice which, according to the proof, was not necessary, and, as to the fifth, there was no question on the pleadings to authorize such an instruction.

　　　　　　　*Judgment reversed and procedendo ordered.*
　(Decided February 24th, 1860.)