JUNE 1824.

Bank of Columbia
vs
Magruder

THE BANK OF COLUMBIA vs. MAGRUDER's Adm'x.

The maker of a promissory note was offered as a witness by the holder in an action against the endorsor, and on his voir dire expressed his doubts of his interest in the event of the cause, and represented it to depend upon the question, whether the act of limitations could be pleaded to a claim he had against the endorsor, in case, on a recovery against him by the plaintiff, he the witness should be sued by the endorsor— Held, that he was not a witness, declaring himself to be interested, nor as a witness believing himself to be so.

In an action against the endorsor of a promissory note, the maker has not such a direct interest in the event of the suit, as ought to exclude him from giving testimony on behalf of the plaintiff—a judgment having been had against him on the note.

Where a demand of payment of the maker of a promissory note, and notice to the endorsor, were on the day after the three days of grace, in conformity to the established practice and custom of the bank, (the holders of the note)—a custom known to, and understood by, the endorsor—Held, in an action against him on the note, that the demand was sufficient.

However defective a declaration may be in stating the demand of payment of a promissory note on the fourth day after it became due, or in omitting to state the custom so to make the demand, and of the endorsor's knowledge of the custom, advantage, if there is any thing in the allegation, can only be taken of it on demurrer, or perhaps on the trial, by way of exception to the admissibility of the evidence.

When the party to be affected by notice of the nonpayment of a promissory note resides in a different place from the holder, the rule is, that the notice may be sent through the post-office to the post office nearest to the party entitled to such notice.

Where the notary, who sends the notice, has inquired as to the residence of the endorsor, and the post-office at which he receives his letters, and sends the notice to such office, the court will presume that to be the nearest office to the endorsor, in the absence of proof to the contrary.

APPEAL from Montgomery county court. Assumpsit on a promissory note, dated the 2d of February 1815, drawn by George Magruder, for $300, and payable, 60 days after date, to the appellee's intestate, (the defendant in the court below,) or order, and by him endorsed to Patrick Magruder, or order, who endorsed it to the appellants.

1. The plaintiffs at the trial offered in evidence the note, the hands-writing of the several parties being first proved; and, for the purpose of showing that the defendant's intestate was not entitled to notice of nonpayment when the note had been demanded of the maker, and payment refused, produced and offered to prove, by George Magruder, the maker, that at the time the note was drawn and endorsed, the intestate was indebted to the maker in a large sum of money, which though not exactly liquidated between them, was believed by them both to be fully equal to the amount of the note, and that it was agreed between them that the note should be offered for discount at the Bank of Columbia, and the proceeds taken by the witness on account of the debt so due to him by the intestate, and that the intestate should have all the time to pay the note that the bank would allow him. It was admitted that the plaintiffs had recovered a judgment on the same note for the amount thereof, and costs of suit, against the witness, and that the judgment was still in full force and effect. The defendant contended, that the witness was incompetent to give such testimony, and was interested in the event of this cause. He was, therefore, examined upon his voir dire, and in answer to the question, whether he was interested in the event of the suit? answered, that he did not conceive himself interested; provided the statute of limitations could not be pleaded in bar to an account which he would offer as a set-off against the defendant's claim against him, if the plaintiffs recovered in this suit for the amount of this note, and he should be hereafter sued therefor by the defendant. The court, [Kilgour, A. J.] was of opinion, that the witness was interested, and refused to

permit him to be sworn. The plaintiffs excepted.

2. The plaintiffs then gave in evidence the note and protest, and proved, by *Walter Smith*, that he has been a merchant in *George Town* since the year 1804, and in a counting house several years previous to that time; that about the year 1806 he was appointed a notary public; that he well recollects that, since the year 1806, and from that time up to June 1818, it was his practice, as a notary, and he believes the custom of the merchants, and of all the banks in the county of *Washington*, to demand payment of promissory notes of the makers on the day after the last day of grace, and not sooner, and in default of payment to give notice to the endorsors on the same day. That the same practice he believes prevailed before the year 1806, and as far back as he has any knowledge or remembrance of banking and commercial transactions. The only exception to this universal practice, as far as his recollection serves him, was in the case of one of the banks of *Baltimore*, which occasionally put into his hands, for protest, notes drawn by persons residing in *Washington*, and gave directions, through the bank there, in such cases, to demand payment on the third day of grace. The instruction from all other distant banks was to demand and give notice and protest according to the practice prevailing in *Washington* county. They also proved by *William Whann*, that he came to the District of *Columbia*, in the year 1792, as a merchant, and became an officer of the Bank of *Columbia* in the year 1795, and is now the cashier of said bank; that from the year 1792, up to June 1818, it was the custom of the merchants and banks in *George Town* and *Washington*, since there were commercial transactions in *Washington*, to demand payment of promissory notes of the makers thereof on the day after the last day of grace, and in default of payment to give notice on the same day to the endorsors; that this practice prevailed in *George Town* in 1792, when the deponent first came there to reside; that the Bank of *Columbia*, since he has known it, has always pursued this practice, and so instructed the notary of the bank, and were advised to this course of proceeding by *J. T. Mason*, esquire. Since June 1818, in consequence of a decision of the Circuit Court, it has been the practice of the Bank of *Columbia* to demand payment of promissory notes of the drawers, both on the last day of

grace, and the day after the last day of grace, and to give notice, in default of payment, on the day after the last day of grace.    The plaintiffs also proved by another competent witness, *D. Kurtz*, that the note of *George Magruder*, dated the 2d of February 1815, at sixty days, in favour of *T. C. Magruder*, endorsed by him and *P. Magruder*, was discounted at the Bank of *Columbia*, and became due April 3d of the same year, and not being paid, it was protested according to custom, and now remains unpaid by either maker or endorsor.    It appears also, that the parties asked a renewal of this note on the 6th of April 1815, which the board agreed to conditionally, (by a general entry on that day, in these words: "when names are right, notes formal, and discounts paid,") from the circumstance of the notes not being regularly entered up. It is evident, that from one or other of the causes above stated, the note was protested.    The note herewith exhibited is the note offered at this bank on the 6th of April 1815, marked "*Bank*."    And, with the consent of the defendant, the plaintiffs read the note in evidence.    The plaintiffs also examined *Samuel Cruise*, and having produced a paper containing copies of the note of the 2d of February 1815, and the protest thereof on the 7th of April 1815, stated, that the same was his hand-writing; that at the time the same was written, and at the time of the date of said protest, he was the clerk of *Walter Smith*, the notary public, and that he recorded said protest, and that said paper is taken from his notarial book; that he made the demand and protest, and gave notice to the endorsors, as stated in the said paper below the note of *George Magruder*.    The said witness further gave testimony, that from the best information which was obtained at the time of the protest, the defendant's intestate was then living near *George Town*, and it was usual to forward notices or letters to him through the *George Town* post office, addressed to him near *George Town*.    The defendant then proved to the jury, that her intestate, at the time of the execution and protest of said note, resided three or four miles from *Montgomery* court-house, and about ten miles from *George Town*, and had resided in the same place or near it ever since the year 1812; that said intestate, during that time, often dealt with the merchants at *Montgomery* court-house, and was frequently there.    That he

1824.

Bank of Columbia
vs
Magruder

was several years at sea before his residence at the place aforesaid, and resided in *George Town* till he was fourteen or fifteen years of age, at which time he went to sea, and after his return was often in *George Town*, where his brothers, the drawer and endorsor of this note, also resided. The plaintiffs then, for the purpose of showing that the defendant's intestate had a knowledge of the customs of the banks in *George Town*, offered to prove, by a competent witness, that the defendant's intestate, before the date of this note, and sometime in 1812 or 1813, received an accommodation in the *Union Bank of George Town*, on a note drawn by himself, for $5000, which was continued some time in that bank. The defendant then prayed the court to instruct the jury, that upon this testimony the plaintiffs were not entitled to recover; and the plaintiffs prayed the court to instruct the jury, that if they believed, from the evidence, the custom herein stated to have been as there stated, and to have been known to the defendant's intestate at the time of the endorsing of the note aforesaid, then it is competent for them to presume that the intestate consented to that custom, and agreed that the demand and notice should be conformable to such custom; and that if the jury believed from the evidence that the notary public used due diligence to ascertain where the intestate lived, and where to address the notice to him, and did address the same to him accordingly, then said notice is sufficient; and if they also believed that the demand and notice were made and given according to the custom aforesaid of the said banks, that the plaintiffs are entitled to recover. But the court, [*Ridgely* and *Kilgour*, A. J.] being equally divided in opinion, refused to give either of the instructions prayed. The defendant excepted to the refusal by the court to give the instruction prayed by her, and the plaintiffs excepted to the refusal by the court to give the instruction prayed by them. The verdict and judgment being for the defendant, the plaintiffs appealed to this court.

The cause was argued at June term last before BUCHANAN, EARLE, DORSEY and STEPHEN, J.

*F. S. Key*, for the Appellants, contended, on the *first* bill of exceptions, that the court below erred in determining the witness offered and sworn on the *voir dire* to be incompetent, for his answer disclosed no interest, but only

a doubt as to his interest, and the court ought to have told him that limitations could not be pleaded to his off-set, and that therefore he was not interested. On the *second* bill of exceptions he contended, that the court ought to have refused the defendant's, and granted the plaintiffs' prayer. That the parties to a note may, by consent among themselves, dispense with the legal demand and notice usual in such cases, or modify them as they please, and that it was competent for the jury, from the evidence offered, to infer such consent, from the known usage of the banks in *George-Town* in relation to all notes discounted by them; and that due diligence having been used in this case by the notary to ascertain the residence of the defendant's intestate, and the usual notice accordingly sent to him, was sufficient. On the questions in the *second* bill of exceptions, (having stated that the common and statute law of this state was adopted in the District of *Columbia* in 1801,) he referred to *Chitty on Bills*, 252, (note.) *Jones vs. Fales*, 4 *Mass. Rep.* 245. *Widgery vs. Munroe*, 6 *Mass. Rep.* 449. *The Lincoln and Kenneback Bank vs. Page*, 9 *Mass. Rep.* 155; *The same vs. Hammatt*, *Ibid* 159. *The Bank of Columbia vs. Okely*, 4 *Wheat.* 243; *Mandeville vs. The Union Bank of George-Town*, 9 *Cranch*, 1. *Riddle vs. Mandeville*, 5 *Cranch*, 331. *Yeaton vs. The Bank of Alexandria*, *Ibid* 51. *Jackson vs. The Union Bank of Maryland*, (ante 146.) *Lewis vs. Burr*, 2 *Caine's Cas.* 196, 198. *The Bank of the U. S. vs. Norwood*, 1 *Harr. & Johns.* 423. *Noble vs. Kennoway*, *Doug.* 510, 513. *Liftley vs. Mills*, 4 *T. R.* 172. *Smith vs. Kendall*, 6 *T. R.* 123. The act of 1793, ch. 30, s. 9; and *The Union Bank vs. Hyde*, 6 *Wheat.* 573.

*T. B. Dorsey*, (Attorney-General,) for the Appellee, contended, on the *first* bill of exceptions, that whether the witness was interested or not, the court below did right in rejecting his testimony. That the answer of the witness that he interested, was sufficient, without any thing else, for the rejection of his evidence. On the *second* bill of exceptions he contended, that there was no legal notice given to the endorsor, and that a proper foundation had not been laid for calling on the court to decide on the custom. Where a place of payment is mentioned in a note, the demand must be made there. Here the note was not dated at

any particular place; and although it was negotiable at the *Bank of Columbia*, it was not payable there. The maker did not reside in the District of *Columbia*, and it was not to be inferred that he had a knowledge of the custom alleged. He referred to *Sanderson vs. Bowes*, 14 *East*, 500. *Ambrose vs. Hopwood*, 2 *Taunt*. 61. *Dickinson vs. Bowes*, 16 *East*, 110. The three days of grace are founded upon statute, and not simply on the custom. *Brown vs. Harraden*, 4 *T. R.* 151. *Tindal vs. Brown*, 1 *T. R.* 169. *Saunderson vs. Judge*, 2 *H. Blk. Rep.* 509. *Smith vs. Kendall*, 6 *T. R.* 123. He also contended, that the declaration did not state the custom relied on by the appellants' counsel.

*Jones* and *F. S. Key*, in reply, to show that the custom need not be set out in the declaration, referred to precedents in *Lilly's Entries*, 1 *Harris's Entries*, and 2 *Chitty's Pleadings*, of declarations on bills of exchange and promissory notes. Also to *Hodsden vs. Harridge*, 2 *Saund*. 61. *Beck vs. Thompson & Maris*, in this court at December term 1819. *Hawkins vs. Jackson, (ante* 151, *note.)* *Rushton vs. Aspinall, Doug*. 679. 1 *Esp. Dig*. 60. If the declarations was defective, the appellee could not take advantage of it at this time.

*Curia adv. vult*

At this term the opinion of the court was delivered by EARLE, J. There were two bills of exceptions signed in the trial of this case, which from the record appears to be a suit brought by *The President, Directors and Company of the Bank of Columbia*, as endorsees of a promissory note, against the administratrix of *Thomas C. Magruder*, the first endorser. The note was drawn by *George Magruder*, on the 2d of February 1815, and made payable to the appellee's intestate, sixty days after date; and payment of it is stated in the declaration to have been demanded on the 7th of April 1815, which is the day after the usual days of grace.

The plaintiffs produced *George Magruder*, and offered to prove by him that the note was discounted at bank, to raise money for *Thomas C. Magruder*, alleging that he was in truth the drawer, and not entitled to notice. He was objected to on the score of interest, and rejected as an incompetent witness to prove the facts for which he

was produced; and from the rejection has arisen the only question this court has to decide on the *first* bill of exceptions. *George Magruder,* on the *voir dire,* expressed his doubts of his interest in the event of the cause, and represented it to depend upon the solution of a question, which was not solved by the court, and which perhaps from his statements they could not answer, if it had been their province to decide it. We do not then consider him a witness, declaring himself on oath to be interested, nor as a witness, believing himself to be so, in neither of which lights has he been contemplated by us in the opinion we have formed on this subject:

Independent of the views he has himself taken of his situation, the true question is, Has he in fact such a direct interest in the event as ought to exclude him from giving testimony on behalf of the appellants? If he has such an interest, this court has been unable to discover it. A recovery against the administratrix of the endorsor, will put nothing into his pocket; and as a judgment has already been obtained against him as the drawer of the note, it will not screen him from an execution, which the bank may at any moment issue against him.

Should the case be established on his testimony against the administratrix, and the principal, interest and costs, recovered of her, she will have her remedy against him as drawer; and it is not easy to perceive how the evidence given by him; or the verdict founded on it, could any way benefit him in the defence he may please to set up to her action. If the account he has spoken of is used in bar of her suit, it must be supported by competent testimony, wholly unconnected with his narrative concerning the original negotiation between him and the endorsor; and he can have no advantages in such defence which he would not have in an action instituted against the administratrix on the same account. A recovery in this cause against the administratrix will carry the costs, and as far as they go, will augment her demand against *George Magruder;* and in this view he may be said to be a witness swearing against his interest. Deeming him every way a competent witness, we think he ought not to have been prevented from giving testimony for the plaintiffs.

The *second* bill of exceptions embodies all the testimony in this cause. The appellants, who were the plaintiffs in

1824.

Bank of Columbia
vs
Magruder

the court below, having by competent testimony offered to prove, among other things, that it had been the uniform and unvaried practice and custom, from the year 1792 to the year 1818, of the Bank of *Columbia*, and of all the other banks of *Washington* and *George Town*, to demand payment of promissory notes, of the drawers thereof, on the day after the last day of grace, and in default of payment, to give notice on the same day to the endorsors; and having offered to prove that the endorsor, *Thomas C. Magruder*, had a knowledge of this custom, and the universality of it, by showing that in the year 1813 he received an accommodation in the *Union Bank of George-Town*, on a note drawn by himself for a considerable sum of money, which was continued in that bank; and having also offered to prove, by the testimony of the clerk of the notary public, that he demanded payment of the note of the drawer, *George Magruder*, on the seventh day of April 1815, which was refused, and that on the same day he gave notice of the demand and refusal to the endorsor, *Thomas C. Magruder*, in a letter put into the post office in *George Town*, addressed to him as residing near that place, being previously instructed, by the best information he could get, that he resided near *George Town*, and that it was usual to forward notices or letters to him through the medium of the *George Town* post office, addressed to him near *George Town*, prayed the court to instruct the jury, that if they believed from the evidence the custom to have been as stated, and to have been known to the defendant's intestate at the time he endorsed the note, then it was competent to the jury to presume that the intestate consented to the said custom, and agreed that the demand and notice should be conformable to the said custom; and that if the jury believed, from the evidence, that the notary public used due diligence to ascertain where the intestate lived, and where to address the notice to him, and did address the same to him accordingly, then the said notice is sufficient; and if the demand and notice was made and given according to the aforesaid custom of the banks, then the plaintiffs are entitled to recover. This instruction was refused, and the refusal has given rise to the discussion of several points in this court, two of which we shall proceed briefly to examine. One relates to the time of demand of payment of the drawer of the note, and the other to the legal sufficiency of the notice given to the endorsor.

1824.

Bank of Columbia
vs
Magruder

The demand was made on the day after the three days of grace, and cannot create a responsibility on the endorsor, unless it was made in conformity to the established practice and custom of the bank, which were well known and understood by him. Had the prayer been gratified by the court, these facts would have been investigated by the jury, and if, established against the endorsor, they would inevitably have led to the conclusion, that he was liable to the plaintiff's action. A custom like this, brought home to the knowledge of the party dealing with the bank, enters into the essence of the contract, becomes a constituent part of it, and must have its due weight in the exposition of it.

The allowance of three days of grace, in the payment of negotiable paper, from long and universal usage, has become the general law of such contracts, but it is not such an inflexible rule as admits of no innovations upon it.

It may be altered and controled by the agreement of the parties, and what is tantamount, it may be changed by the usage and custom of dealing perfectly known to the parties, and to which they will be supposed to have had special reference in making their contract. If it was an established and unvaried usage of the Bank of *Columbia* to exceed the three days of grace, and to demand payment on the fourth day, and this was well known to *Thomas C. Magruder* at the time of the endorsement, he is to be supposed to have assented to it; and this departure from the general rule will be sanctioned, to give efficacy to the contract, and to establish his liability to pay the money. It gives us pleasure to know, that we are supported in those ideas by the supreme court of the *United States*. In their late decision of the case of *Renner vs. The Bank of Columbia*, 9 *Wheat. Rep.* 581, they have fully recognized them. The opinion of the court, delivered by Judge *Thompson*, is an able exposition of the law of commercial contracts, and of the legal influence the custom and usage of particular banks may have upon them, and will unquestionably be regarded by all as a commanding authority on such subjects. We close this part of the case with a single remark, in answer to the objection taken on the argument to the declaration in the cause. It is this, that however faulty it may be, in stating the demand on the fourth day , or in omitting to state

the custom and the endorsor's knowledge of it, upon neither of which points do we now undertake to decide—the objection cannot at this time be supported. If there is any thing in the allegation, advantage ought to have been taken of it on demurrer, or perhaps on the trial, by way of exception to the admissibility of the evidence, and in neither of these forms can it at present be considered.

With regard to the notice to the endorsor of the demand on, and refusal of payment by the drawer, it too would have been examined by the jury, if the instructions asked for on this head had been given by the court. If it had been ascertained by the jury, that the clerk of the notary public had demanded payment of the note of the drawer on the seventh day of April 1815, according to the usage and custom of the bank before alluded to, and that on the same day he gave notice of the demand and refusal to the endorsor, in a letter put into the post office in *George Town*, addressed to him as residing near that place, having been previously instructed, by the best information he could get, that the endorsor resided near *George Town*, and that it was usual to forward notices or letters to him through the medium of the *George Town* post office, addressed to him near *George Town*, we can have no doubt that this would have been sufficient notice to charge the endorsor. When the party to be affected by the notice resides in a different place from the holder, the rule is, that the notice may be sent through the post office to the post office nearest to the party entitled to such notice. *Ireland vs. Kip*, 11 *Johns. Rep.* 231. *Freeman vs. Boynton*, 7 *Mass. Rep.* 483. Here the rule we think has been complied with, considering, as we must do, the post office at *George Town* to be the post office nearest to the endorsor, in the absence of all proof that there was a post office nearer to his residence.

We therefore dissent from the opinions expressed by the court below in both of the bills of exceptions.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.