(Decided February 28th, 1895.)

---

# THE FIRST NATIONAL BANK OF GRAFTON, WEST VIRGINIA, *vs.* THE BUCKHANNON BANK OF WEST VIRGINIA.

*Diligence in Presenting Checks for Payment—Discharge of Drawer
—Collecting Agent—Substituted Check.*

When the banker on whom a check is drawn subsequently becomes insolvent, the want of due diligence by the payee of the check, or his collecting agent, in presenting the same for payment, does not discharge the drawer when it is shown that the latter was not injured by the delay, and that if due diligence had been used the check would not have been paid.

If a check be drawn on a bank situated in another place, it should, at the latest, be mailed for presentment on the day after it is received, and should be presented at the place of payment on the day after it arrives there.

The defendant bank gave to the plaintiff bank, in West Virginia, a check on N. & Sons, bankers in Baltimore, with whom defendant had a deposit. Plaintiff received the check on January 12, and on the same day mailed it for collection to a bank in Philadelphia, which received it on January 13, and forwarded it for collection to a Baltimore bank, by which it was received on January 14. At one o'clock on that day the check was presented to N. & Sons for pay-

ment.   They drew a check on the Western Bank in settlement and received the check drawn on them.   Thirty minutes afterwards N. & Sons suspended business and closed their doors.   Their check was afterwards presented for payment to the Western Bank, on the same afternoon, during banking hours, and payment was refused. Had the plaintiff's check been presented to N. & Sons on January 13, or before noon on January 14, it would have been paid, but at the time they gave their check on the Western Bank they had no funds there and the check was of no value, and they themselves could not then pay plaintiff's check on them.   *Held,*

1st. That since the plaintiff was under no obligation to forward the check on N. & Sons until the day after its receipt, viz., January 13, the fact that it was sent through Philadelphia did not cause it to reach Baltimore later than plaintiff was bound to have it there.

2nd. That since the plaintiff bank had, through its collecting agent, until the close of business on January 15, to present the check for payment, it was guilty of no negligence in not presenting it prior to noon on January 14.

3rd. That since N. & Sons were unable to pay the check when it was presented, the surrender thereof and acceptance of the substituted check caused no injury to the defendant, and, as the substituted check was valueless, the mere failure to present it for payment within thirty minutes likewise produced no injury to the defendant.

Appeal from the Baltimore City Court.   This was an attachment against a non-resident sued out by the appellant against the appellee, and laid in the hands of the Continental National Bank.   The voucher was a running account of debits and credits showing a balance due to the appellant of $1,024.75.   The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, MCSHERRY, FOWLER, PAGE, ROBERTS and BOYD, JJ.

*Frank Woods* for the appellant, cited: 2 *Daniel Neg. Instr.*, secs. 1592, 1595, 1598, 1625; *Story on Prom. Notes,* sec. 493; *Tiedeman on Com. Paper,* sec, 445; *Burkhalter* v. *Bank,* 42 N. Y. 538; *1st Nat. Bank* v. *4th Nat. Bank,* 77 N. Y. 320; *Johnson* v. *Bank of N. A.,* 5 Robertson (N. Y.) 554; *Smith* v. *Miller,* 6 Robertson, 157.

*Edward Duffy* (with whom were *Nicholas P. Bond* and *H. J. Jewett, Jr.*, on the brief), for the appellee, cited: *Anderson* v. *Gill*, 79 Md.; *Ward* v. *Smith*, 7 Wall. 45; *Cromwell* v. *Lovett*, 1 Hall (N. Y.) 56; *Stevens* v. *Park*, 73 Ill. 387; *Small* v. *Franklin Mining Co.*, 99 Mass. 277; *Sweet* v. *Titus*, 4 Hun. (N. Y.) 638; *Heartt* v. *Rhodes*, 66 Ill. 351; *Taylor* v. *Wilson*, 11 Metcalf, 51; *Haines, etc.* v. *Pearce*, 41 Md. 221; *Morse on Banks and Banking*, 3d Ed. sec. 247; *Hazlett* v. *Commercial Bank*, 132 Pa. St. 125; *Bullard* v. *Randall*, 1 Gray, 605; *Minot* v. *Russ*, 156 Mass. 459; *Smith* v. *Miller*, 43 N. Y. 171; *Ibid.*, 52 N. Y. 545; *Daniel on Negot. Inst.*, sec. 1601; *Bank* v. *Samuel*, 20 Fed. Rep. 664; *Minot* v. *Russ*, 156 Mass. 460; *Smith* v. *Miller*, 43 N. Y. 174; *Hazlett* v. *Com. Bank*, 132 Pa. St. 125; *Metropolitan Nat. Bank of Chicago* v. *Jones*, 137 Ill. 634; *Born* v. *First Nat. Bank of Indianapolis*, 123 Ind. 78; *First Nat. Bank* v. *Leach*, 52 N. Y. 350; *Thomson* v. *Bank*, 82 N. Y. 1; *Girard Bank* v. *Bank of Penn.*, 39 Pa. St. 92; *Freund* v. *Importers, etc., Bank*, 76 N. Y. 352; *1st Nat. Bank* v. *4th Nat. Bank*, 6 Hun. 335.

McSHERRY, J., delivered the opinion of the Court.

The case of *Anderson* v. *Gill, Extr.*, 79 Md., is clearly distinguishable from the one now before us. In *Anderson* v. *Gill, Extr.*, we held that when the payee of a check drawn on a banker having funds of the drawer available to cash it, presents it in due time through his collecting agent, and the latter, instead of receiving money for it, surrenders it and takes in lieu of the money the drawee's own check upon another bank having funds with which to pay the substituted check, and then fails to use proper diligence in presenting the substituted check for payment, which, when it is presented, is not paid, because of the supervening insolvency and suspension of the drawer of the substituted check, the loss must fall, as between the drawer and payee of the original check, upon the latter and not upon the former. It is not necessary to repeat the reasons, or again refer to the

adjudged cases upon which the conclusion reached in that case was founded. It is obvious that if the payee's own negligence in not presenting the substituted check in a reasonable time before the suspension of its drawer has been the direct cause of its non-payment, or, stating it differently, if the substituted check was drawn upon a bank having funds of its drawer, and if it would have been paid, had due and proper diligence been used in presenting it, and after the expiration of the time beyond which its presentment would not be within the limits of due diligence, the drawer of it suspends and the substituted check is in consequence not paid; this negligence of the payee of the original check in not presenting the substituted check at a time when it would have been paid, cannot be visited upon the drawer of the original check and he will be discharged. But this doctrine cannot apply where the facts fail to show that the drawer of the original check has been injured by the delay or the want of due diligence of the payee or his collecting agent. If the drawer of the original check has not been injured by the conduct of the payee, he is in no worse position in consequence of that conduct, than if due diligence had been used by the payee without securing payment; and if the facts show that the exercise of due diligence in making presentment of the substituted check would have been useless, because of the insolvency of the drawer thereof, and because the drawer thereof was without funds to meet it, then the failure to use such diligence could not prejudice the rights of the drawer of the original check; provided the drawee thereof was insolvent when it was drawn, and was unable to cash it when presented. Assuming always that the original check would have been paid in cash, had cash been demanded and insisted on when it was presented; and assuming also that the exercise of due diligence would have secured the payment of the substituted check, then the failure to exert that diligence, whereby loss occurs, would result in an injury to the drawer of the original check and would discharge him. But injury can-

not be predicated of the want of due diligence unless, but for the want of such diligence, the money would have been paid.    Until it is shown that the use of due diligence by the payee or his agent would have resulted in the payment of the substituted check, the first step has not been taken towards establishing injurious negligence on his part.

Now, in the case at bar, the Buckhannon Bank of West Virginia, being indebted to the First National Bank of Grafton, West Virginia, and having a deposit with J. J. Nicholson & Sons, of Baltimore, an amount greater than this debt, gave to the Grafton Bank a check on Nicholson & Sons for the amount of the indebtedness due to the Grafton Bank.    This check was dated January the eleventh, 1892, and was on the same day mailed to the Grafton Bank, and was received by it on the succeeding day.    On that day, the twelfth, the Grafton Bank endorsed the check for collection for its account and forwarded it by mail to its correspondent, the Manufacturers' National Bank of Philadelphia.    On the thirteenth, the Manufacturers' Bank received it and at once sent it by mail to its correspondent, the National Farmers' and Planters' Bank of Baltimore, for collection.    On the next day, the fourteenth, the last named bank received it, and at *one o'clock* presented it, together with other checks and drafts, at the counter of J. J. Nicholson & Sons for payment.    Payment was not made in cash, but instead thereof, upon the surrender of these checks and drafts, Nicholson & Sons drew their own check on the Western National Bank of Baltimore for the total amount of this and the other checks and drafts, and delivered it to the messenger of the National Farmers' and Planters' Bank.    In *thirty minutes* afterwards Nicholson & Sons, having suspended, and being hopelessly insolvent, closed their doors.    When the check of Nicholson & Sons to the National Farmers' and Planters' Bank was shortly afterwards, but on the same afternoon, and during banking hours, presented to the Western National Bank, payment was refused.    Demand was immediately made for the return by the Nicholsons of the surrendered

checks, but admittance to their banking house was not obtained until next day, when the check drawn by the Buckhannon Bank was protested and then recovered by an action of replevin.   It is admitted by the agreed statement of facts that had the check held by the Grafton Bank been presented to Nicholson & Sons at any time on the *thirteenth* or *up to noon* on the fourteenth, it would have been paid by them; and it is further admitted that Nicholson & Sons had no funds to their credit with the Western National Bank, but, on the contrary, were largely indebted to that bank on account of overdrafts when they drew their check in favor of the National Farmers' and Planters' Bank at one o'clock on the fourteenth of •January.   It is also distinctly admitted that this check " was in fact of no value."

We are now asked, in the light of these facts, to say that the receipt by the National Farmers' and Planters' Bank of this worthless check and the failure to present it within *thirty minutes* thereafter, though it is not shown that it would have been paid had it been presented within that time, has resulted in such an injury to the Buckhannon Bank, as to discharge the latter's liability to the Grafton Bank; and this, too, though the Nicholsons were utterly unable, by reason of their hopeless insolvency, to pay in cash the check drawn on them by the Buckhannon Bank when it was presented at one o'clock the same day.   That is the appellee's contention, and so the Court below decided. The position is absolutely untenable.

The Grafton Bank having received, on January the twelfth, the check drawn on Nicholson & Sons, was bound to present it for payment in a reasonable time.   There being no dispute about the facts, what constituted a reasonable time is a question of law for the Court.   Whilst it is undisputed that if the check be drawn on a bank located in the place where the check is delivered, the holder has until the close of business hours of the next secular day to present it, it is equally the settled law that if the check be drawn on a bank situated in another place, it should, at the

latest, be mailed for presentment on the day after it is received, and should be presented at the place of payment on the day after it reaches there. 3 *Rand. Com. Paper*, sec. 1106; *Byles on Bills*, 14, 164; *Chitty on Bills* (13 Am. Ed.) 383; *Rickford* v. *Ridge*, 3 Camp. 537. In the pending case, as already stated, the check was received by the Grafton Bank on January the twelfth, and was mailed, not the next day, but the same day, to its Philadelphia correspondent for collection, and was received in Baltimore on the fourteenth, and was on that day presented for payment. Though the record contains the admission that if the check had been mailed in Grafton on the twelfth, to Baltimore *direct*, it would, in the due course of the mail, have reached the latter place on the morning of the thirteenth; still the Grafton Bank was under no obligation to mail it for collection until the day *after* it was received by it, that is, until the thirteeenth; and had it forwarded it on that day by mail direct to Baltimore, the check would not have been received there until the *fourteenth*, the day it was in fact received. The forwarding of it through Philadelphia did not, therefore, cause it to reach Baltimore later than the Grafton Bank was bound to have it there for presentment. As, under the rule above stated, the Grafton Bank had, through its collecting agent, until the close of business hours on the fifteenth to present the check for payment, it was obviously guilty of no negligence in not presenting it prior to *noon* of the fourteenth, up to which time, according to the agreed statement of facts, it would have been paid. But the check having been presented an hour later, when confessedly the Nicholsons were unable to pay it over their own counter, and the National Farmers' and Planters' Bank having taken, upon the surrender of this worthless check, an equally worthless one drawn by Nicholsons & Sons on a bank in which they had no funds, but to which they were already heavily indebted on overdrafts, no injury was in fact done to the Buckhannon Bank unless it was made to appear that the Western National Bank would have paid Nicholson & Sons'

check within the thirty minutes following its receipt by the National Farmers' and Planters' Bank, even though the drawers of that check had no funds to their credit when they drew it.   We can not assume that the Western National Bank would have paid this check if it had been presented prior to the actual suspension of the Nicholsons; and as there is nothing in the record to show that it would have been paid, there is nothing to indicate that the failure to make the presentment worked any injury to the Buckhannon Bank at all.   As the Nicholsons, according to the conceded facts, were utterly unable to pay the check drawn on them by the Buckhannon Bank when it was presented at their counter, the surrender of the check and the acceptance of the substituted check of itself caused no injury to the Buckhannon Bank; and as, according to the admitted facts, the substituted check was, when drawn, utterly valueless, the mere failure to present it within *thirty minutes* produced no injury to the Buckhannon Bank.   Neither, therefore, the acceptance of the substituted check, nor the failure for thirty minutes to present it, placed the Buckhannon Bank in a worse position than it occupied at the moment its check was presented to Nicholson & Sons for payment; and that presentment was, in fact, made earlier than under the law it was necessary to make it.   Consequently, no act done by the Grafton Bank, or by its agents, caused any injury to the Buckhannon Bank.   In the *Anderson case* just the opposite facts were presented, and, of course, the opposite conclusion was reached.   In that case it appeared that the check drawn by Anderson on Nicholson & Sons would have been paid in cash when presented, had cash been demanded; and further, that the substituted check on the Western National Bank would have been paid had due diligence been used in presenting it.   It was shown that two other checks, drawn by Nicholson & Sons on the Western National Bank *after* they had drawn and delivered the one given in exchange for the Anderson check, were presented and paid. Had the same diligence been used by the holder of the

check given in substitution for the Anderson check that the holders of these two other checks exerted, *that* check would also have been paid. The failure to use that degree of diligence, under the circumstances, therefore resulted in injuring Anderson, and he was held to be discharged. It follows, from what has been said, that the judgment of the Court below was erroneous, and it will be reversed that judgment may be entered for plaintiff.

> *Judgment reversed and cause remanded with costs above and below.*

(Decided February 28th, 1895.)