## J. H. EDMISTEN V. HENRY HERPOLSHEIMER COMPANY.*

FILED DECEMBER 4, 1901. No. 10,671.

Commissioner's opinion, Department No. 3.

1. **Check:** PRESENTATION: LIMITATION OF TIME TO THE FOLLOWING DAY. In the absence of special circumstances, in order to hold the drawer liable on his check, it must be presented not later than the day following its receipt, where the payee receives it in the place in which the bank on which it is drawn is located.

2. ——: ——: ——: BANKING HOURS: CLEARING-HOUSE. That the check is drawn on a bank in a city where the collection of such paper is made through a clearing-house, and the check was received after banking hours, does not relieve the payee of the necessity of presenting it the following day.

* Rehearing allowed. See opinion, page 98, *post. See, also, appendix to volume 67.*

ERROR from the district court for Lancaster county. Action by drawees against maker, upon a check drawn and never presented. The facts appear in the opinion. Tried below before HOLMES, J. Judgment for plaintiffs below. *Reversed.* SEDGWICK, J., dissenting.

*John S. Kirkpatrick* and *George E. Hager,* for plaintiff in error.

*Tibbets Bros., Morey & Anderson, contra.*

ALBERT, C.

On Friday, May 28, 1897, J. H. Edmisten executed and delivered to Henry Herpolsheimer and another, doing business under the name of H. Herpolsheimer Company, his check, drawn on the Merchants' Bank of Lincoln, for $200.62, in payment of an account, at their place of business in said city. On the following day the defendants in error deposited the check, with others, in the American Exchange National Bank, with which they transacted their banking business. The Merchants' Bank was open for the transaction of business at the date of the delivery of the check and the day following. The following Monday was a legal holiday, and the next morning the Merchants' Bank failed to open, and has never since opened for the transaction of business, and passed into the hands of the state banking board. It was wholly insolvent, and nothing was realized from its assets. The check was never presented. This action was brought by the payees against the maker of the check to recover the amount due thereon. A trial was had to the court, which resulted in a finding and judgment for the plaintiffs. The defendant brings the case here on error.

The only disputed fact in the case is whether the check was delivered during banking hours on the date of its delivery. This question was submitted to the court on con-

flicting evidence, and the court having found that it was delivered after banking hours, under the well known rule of this court its finding on that point will not be disturbed. Therefore, for the purpose of this case, we shall assume as one of the facts in the case that the check was delivered to the payees after banking hours on May 28, 1897.

This leaves but one question in the case, and that is whether the failure to present the check for payment on the day after its receipt relieves the defendant from liability thereon. It will be observed that the payees were doing business and received the check in the city where the bank on which it was drawn was located. The rule is that in the absence of special circumstances, in order to hold the drawer liable on his check, it must be presented not later than the day following its receipt, where the payee receives it in the same place in which the bank on which it is drawn is situated. Tiedeman, Commercial Paper, sec. 443, and the cases there cited; Norton, Bills & Notes [3d ed.], 388 *et seq; Anderson v. Rodgers,* 53 Kan., 542, 27 L. R. A., 248; 2 Daniel, Negotiable Instruments [4th ed], sec. 1590; 2 Randolph, Commercial Paper [2d ed.], sec. 1105; *Holmes v. Roe,* 28 N. W. Rep. [Mich.], 864; *Grange v. Reigh,* 67 N. W. Rep. [Wis.] 1130; *Murphy v. Levy,* 50 N. Y. Supp., 682. Counsel concede this to be the rule, but urge that under the special circumstances in this case the plaintiffs were not required to present the check on the day following its receipt. The special circumstances relied on are that the collection of such paper in the city of Lincoln is made through the agency of a clearing-house, and that the check, having been received after banking hours, could not, in the usual course of business, pass through the clearing-house and be presented for payment on the day following its receipt by them. This position is sustained by two opinions, both from the same court, and delivered by the same judge. *Loux v. Fox,* 33 Atl. Rep. [Pa.], 190; *Willis v. Finley,* 34 Atl. Rep. [Pa.], 213. In the opinions referred to a departure from the settled rules of the law merchant is impliedly admitted. An at-

tempt to justify such departure is made on the grounds of a custom among banks, and the impossibility, owing to the great volume of business, of conforming to the established rule. The reasoning does not commend itself to our judgment. We do not believe a party should be permitted to excuse a lack of diligence by showing that such lack is customary among those engaged in. like business in the same city, nor to plead the magnitude of his business as an excuse for a failure to prosecute it with diligence. The special circumstances that will excuse delay in presentment have generally been held to be such as are beyond the holder's control, or arise from some agreement or understanding between the drawer and some one or more of the other parties to the paper.

In *Holmes v. Roe,** 28 N. W. Rep. [Mich.], 864, the court says: "The clearing-house, and the method of conducting business through it, has no bearing upon the liability of the drawer of a check which is alleged not to have been presented for payment within the time allowed by law."

In *First Nat. Bank of Wymore v. Miller,*† 37 Nebr., 500, this court says: "No custom or usage among bankers as to the manner of presenting ordinary checks for payment, will relieve them from the legal duty of presenting such checks for payment within a reasonable time."

The cases just cited, to our minds, state the correct rule. It follows that the failure of the plaintiffs to present the check for payment on the day following its receipt by them relieves the defendant from liability thereon, and that the judgment of the district court is wrong and should be reversed.

It is recommended that the judgment of the district court be reversed, and the cause remanded for further proceedings according to law.

DUFFIE and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing

* 4 Am. St. Rep., 844.          † 40 Am. St. Rep., 499.

**13**

opinion, the judgment of the district court is reversed, and
the cause remanded for further proceedings according to
law.

REVERSED AND REMANDED.

The following opinion on rehearing was filed October
22, 1902. *Reversal adhered to.* SEDGWICK, J., dissents:

Commissioner's opinion, Department No. 2.

Check: HOLDER: BANKING HOURS: LOCATION OF BANK: FORWARDING
BY MAIL. It is the duty of the holder of a check, if he receives
it after banking hours, to present it during banking hours of
the next day, if the bank is located in the same town; if not,
then to forward it by mail the next day.

OLDHAM, C.

The issues involved in this case are properly stated in
the original opinion. There was only one disputed ques-
tion of fact between the parties to the controversy and that
was as to whether the check of defendant, Edmisten, was
presented to plaintiffs during banking hours on Friday,
May 28, 1897; defendant contending that it was, and the
plaintiffs that it was not, delivered until banking hours
had closed. This dispute was determined by the trial
court in favor of plaintiffs' contention. The finding of the
trial court on this disputed question of fact was and should
have been treated as binding on this court in the former
opinion. All other questions of fact were stipulated in the
record, and were briefly stated as follows: That the
Merchants' Bank of Lincoln was open all day Saturday
following the day the check was drawn, from 10 o'clock
A. M. until 3 o'clock P. M.; that all checks presented on
that day were paid by this bank; that defendant, Edmisten,
had funds to his credit in this bank more than sufficient to
pay the check in controversy; that plaintiffs' place of busi-
ness and the Merchants' Bank were each located in the
city of Lincoln, Nebraska, and were situated within a dis-
tance of two blocks of each other; that a subsequent check
drawn by the defendant, Edmisten, and delivered to one
F. L. Rose on the 29th day of May, was presented at the

bank on that day by said Rose, and was paid in full. It was further stipulated that the 30th day of May was Sunday; that the 31st* day of May was Decoration Day, and a legal holiday, on which none of the banks of Lincoln were open for transaction of business; and that on the following day, June 1, the Merchants' Bank suspended business, and was and is wholly insolvent. It is also stipulated that plaintiffs proceeded with the collection of the check in the manner set forth in the original opinion, and that the check never was presented to the Merchants' Bank on account of the suspension of that institution, but that it was presented to defendant, Edmisten, and payment demanded of him, and payment refused, before this action was instituted.

In the face of this record, we can see no escape from the conclusion reached by the learned commissioner on the former hearing of this case. We have carefully re-examined the numerous authorities cited in support of his decision, and are satisfied that he has followed a well-beaten track that has been trodden by many judicial feet, and we do not feel disposed to recommend this court to depart from this broad highway of well-reasoned cases to follow the dimly marked by-path pointed out by counsel for defendants in error. There is every reason why a strict rule of diligence in presenting a check by the holder should be exacted in this case, and no reason why it should be relaxed. Here, plaintiffs' place of business was but two blocks from the bank on which the check was drawn, and the bank remained open, paying all checks presented, a whole day after the check was received, and it would have required very slight physical exertion for plaintiffs or some of their employees to have taken this check to the bank Saturday, and received the money on it; but, instead of this, plaintiffs chose a leisurely, labyrinthine journey for this check, by depositing it in another bank and having it thread its way from this bank to the clearing-house, and from the clearing-house to the banking-house of the drawee. And while this check was pursuing this circuitous route

* Wheeler, ch. 41, sec. 8; Cobbey, sec. 8907.

the drawee departed its business life with enough of defendant's money in its possession to have satisfied the check had it reached its destination before the demise of the bank.

In the case of *Grange v. Reigh*, 67 N. W. Rep. [Wis.], 1130, it is said: "Where the payee of a check resides and receives the check at the place where the bank is located, a reasonable time for presentation to the drawee reaches, at the latest, only to the close of banking hours on the succeeding day, excluding Sundays and holidays."

In *Kirkpatrick & Co. v. Puryear*, 22 L. R. A. [Tenn.], 785, 788, the court says: "It is the duty of the holder of a check, if he receives it after banking hours, to present it during banking hours of the next day, if the bank is located in the same town, as was this one; if not, then to forward it the next day by mail. If he fails to do this, and the check is afterwards not paid, his right, as against the indorser, is extinguished," citing, in support of this conclusion, Morse, Banks and Banking, sec. 422; *Planters' Bank v. Merritt*, 7 Heisk. [Tenn.], 193; *Schoolfield v. Moon*, 9 Heisk. [Tenn.], 171, 173.

We are therefore satisfied that the former opinion was right, and should be adhered to; and we so recommend.

BARNES and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the former judgment of this court be adhered to.

JUDGMENT OF REVERSAL ADHERED TO.

SEDGWICK, J., dissenting.

In *First Nat. Bank of Wymore v. Miller*, 37 Nebr., 500, 506, this court says: "We do not mean to lay down any rule by which the indorsee of a check must present the same for payment in any given time in order to hold the indorser." And again, in the same case: "The question then is, whether plaintiff in error was guilty of such negligence or laches in the presentment of these checks for payment to the bank on which they were drawn as to release the

indorser, Miller.   The authorities all say that in order to
hold an indorser of a check it must be presented by the
indorsee in a reasonable time, and as to what is a reason-
able time, depends upon the facts and circumstances of
each particular case."   This is the rule of all the decis-
ions.   The maker of a check selects the bank which he de-
sires to trust with his deposits.   He undertakes to pay his
creditor by drawing his check upon his account in the bank
which he has so selected.   If the bank fails before the
check is paid, it is the loss of the drawer of the check, un-
less that loss is caused by the negligence of the party to
whom the check is drawn.   The payee is guilty of such
negligence as will shift the loss to him if he fails to
present the check for payment within a reasonable time.
The question is, has he delayed in presenting the check for
such an unreasonable time as to charge him with such
negligence that he must make good the loss which other-
wise would fall upon the maker of the check?

The apparently conflicting opinions from which it is
sought to derive the conclusion that there is an established
rule that the check must be presented not later than on
the next day after it is received, when received in the town
in which the bank is located on which it is drawn, present
a curious study.

In one of the earlier cases, *Smith v. Janes*, 20 Wend.
[N. Y.], 192, 195, decided in 1838, it is said: "We can
not presume laches, especially in a case where the paper
was in circulation for so short a period.   How long a bill
or check, payable on demand, or at a given number of days
after sight, may be kept in circulation before presentment,
without discharging some of the parties, is not a settled
question.   Chitty, Bills, 276, ed. of 1826.   It depends in
a great degree on the circumstances of each particular
case.   In *Robinson v. Ames* (20 Johns. R., 146), the bill
was drawn in Georgia on merchants residing in New York,
and although seventy-five days elapsed before the present-
ment, it was held that the drawers were not discharged.
In *Gowan v. Jackson* (20 Johns. R., 176), the bill was

drawn in Antigua, on merchants residing in London, and having been put in circulation, it was held that the drawer was not discharged although six months had elapsed before the presentment. In *Aymar v. Beers* (7 Cowen [N. Y.], 705), the bill was drawn in New York on a house in Richmond, Va., at three days' sight, and it was held that the drawer was not discharged by a delay of twenty-nine days in presenting the bill for acceptance. The bill had not been put in circulation but there were other special circumstances to show that the payee was not chargeable with negligence. In the case at bar, three days were necessary for the transmission of the check from New York to Buffalo, and it could not have been in circulation, after it passed from the plaintiff, more than four or five days before it was presented at the bank for payment. There is no authority for imputing laches on such a state of facts, and the judge was right in overruling the objection."

A little later there were a number of decisions to the effect that a delay of one full day after the day of receipt of the check was not unreasonable. Later still, several cases arose in which the payee of the check personally presented it to the bank upon which it was drawn, after holding it in his possession for more than one full banking day, —that is, having received it in banking hours, held it until after banking hours on the following day, without putting it in course of collection,—and in the absence of special circumstances excusing it, the delay was held unreasonable.

Upon these decisions some courts have attempted to establish the converse of the first proposition, to wit, that a delay of more than one full day is unreasonable, and shows negligence. Some of the courts have attempted to do what this court has refused to do,—that is, to lay down a fixed rule by which the indorsee of a check must present the same for payment within a given time in order to hold the indorser; but very few have been able to establish such a rule satisfactory to themselves. When the defendant

gave his check to the plaintiffs after banking hours on Friday, did he have a right to suppose the plaintiffs would send the check direct to the bank on which it was drawn for payment, or did he have reason to suppose that the plaintiffs would deposit the check, with others received by them, to their account in the ordinary course of business? Is it unreasonable for a business man to adopt the practice of collecting his checks together before the close of banking hours on each day, and depositing them in his bank to his credit? This is a general custom among business men; and have they a right to practice such custom, or is it negligence for them to do so? If a business man in the course of a day receives personal checks drawn on a half dozen or more different banks of the town in which he is doing business, must he send those checks to the individual banks on which they are drawn, or may he adopt and practice the custom of depositing them together in his own bank, and rely upon the bank to present them by a regular course of business. If there is any reason to suppose that the bank in which his money is deposited is unsafe, the drawer of a check may transfer his account to a safer bank, or he may deliver the check upon condition that it be immediately presented for payment. If he thinks his deposit is not in danger, he may deliver his check without any condition; thereby assuring the payee that his business may be done through the banks in the ordinary way. If he does this, why should not the payee rely upon it, and transact his business in the ordinary way, without being chargeable with negligence? This is surely in harmony with all the earlier decisions, and is not in conflict with the principle recognized in all the decisions; that is, that the payee is not chargeable with negligence unless he delays unreasonably in presenting the check. Certainly, no court would say that to make use of the banks in the ordinary course of such business—to treat a check given in ordinary business transactions as business men generally treat commercial paper that comes to them in a regular way—is unreasonable, unless bound by precedent to do so. It is

said that this court must do so because the rule is firmly established. But a correct interpretation of the well-considered cases compels the contrary conclusion. The laws of business, which arise from business necessity, are more controlling than careless expressions of courts of other jurisdictions, particularly if such expressions originate in cases where they were not necessary to the determination of the point involved. Such are, generally speaking, the cases relied upon as establishing the rule sought to be invoked in this case.

The plaintiffs' custom of depositing their checks immediately before the close of banking hours on each day is not unreasonable. They rely upon their bankers to act promptly in the usual and regular course of business in presenting the checks so deposited. If they fail to do so, the drawer of the check could, of course, hold the drawee responsible for their negligence. If they present the check in the regular and ordinary course of business, everything has been done that business men expect. It is all the drawer is presumed to have expected, and all he has a right to demand. For the courts to say that this course of business, which the commercial necessities of the business world have established, must be broken up, is unreasonable, and is in conflict with the above rule of this court.

It is said that the custom of clearing-houses, and the ordinary course of doing business through the banks, have no bearing upon the question. Is this proposition sound? *Holmes v. Roe*, 62 Mich., 199, 28 N. W. Rep., 864, 4 Am. St. Rep., 844, is the case relied upon as establishing the doctrine. In that case the court said: "We agree with the learned judge who presided at the trial that the clearing-house, and the method of conducting business through it, had no bearing upon the merits of the case." This was because the payee held the check for an unreasonable length of time before presenting it or in any way disposing of it. The case turned upon the negligence of the payee in carrying the

check home, and keeping it for an unreasonable length of time; and so the method of conducting business through the clearing-house had nothing to do with the case. This is all that can be derived from the language used. But when one is given a check upon a bank, and has no notice of any necessity of doing otherwise, he may treat the check as bankable paper. He may use the banks in the ordinary way and not be chargeable with negligence. This is clearly what the parties contemplate, and is certainly not so unreasonable a course on the part of the payee as to charge him with negligence under the above rule adopted by this court. The practice of doing business through the clearing-house is well established, and very generally recognized. Bouvier says it originated in London, and was introduced in New York in 1853; and "in London the practice of presenting checks at the clearing-house has been held a good presentment to the banker at law." 1 Bouvier, Law Dictionary (Rawle's), 334. And in all the earlier cases in this country, and in nearly all the later ones, the negligence of the payee consisted in retaining the check in his own possession for an unreasonable length of time. In *Loux v. Fox,* 33 Atl. Rep., 190, the supreme court of Pennsylvania said: "As we have seen, it was simply impossible either to present the check in question for payment, or to deposit it for collection, on the day it was received. In every large commercial metropolis like Philadelphia, in which clearing-houses are established, the customary mode of collecting checks drawn on banking institutions therein is by depositing them in bank for collection, etc. According to the ordinary course of business, checks thus deposited are presented for payment on the next ensuing business day. That appears to have been the course pursued by the defendant in this case; and unless the rule above quoted from *Bank v. Weil, supra*\* is restricted in its operation to checks received during banking hours, and a sufficient time before the close thereof to enable the payees either to present them for payment, or to deposit them for

\*141 Pa. St., 457, 21 Atl. Rep., 661.

collection, on the day they are received, the usual course of business will be most seriously disturbed."

Has the court a right to disturb this course of doing business? If the check in this case had been given during banking hours on Friday, it appears from the evidence it would have been deposited on Friday, and in that case, would have been presented for payment on Saturday, but, having been given after banking hours on Friday, it could neither be presented for payment nor deposited in plaintiffs' bank on Friday, and was therefore in effect the same as though it had been given to plaintiffs on Saturday.

Under such circumstances to hold the plaintiffs guilty of negligence is upon principle wrong, and even violates the rule that they should have one full day after receiving the check before presenting it.