MARYLAND TITLE GUARANTEE COMPANY *v.*
ABRAHAM ALTER
[No. 56, April Term, 1934.]

*Decided June 13th, 1934.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Louis J. Jira* and *Robert R. Carman,* with whom was *Elbridge B. Donaldson* on the brief, for the appellant.

*Randolph Barton, Jr.,* with whom was *Ellis Levin* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The appellant, holder of a check, unpaid by reason of failure of the drawee, sued the drawer, now appellee, for the amount of it, a verdict for the defendant was rendered at the direction of the court, and from the judgment entered accordingly the plaintiff has appealed. The question is whether the holder failed to present the check for payment in the time required by law.

According to the plaintiff's evidence, Victor Frenkil and his wife, not parties to the suit, were purchasing real

property, and the Maryland Title Guarantee Company was acting as intermediary for the persons involved, in completing the purchase and transfer, with execution of the necessary papers, and the necessary adjustments of money payments and allowances. Of $6,250 purchase money to be paid, Alter, the appellee, was lending Frenkil and wife $5,500, to be secured by a mortgage. At an agreed time, on February 23rd, 1933, the seller, the purchasers, and Alter met to complete the transaction at the office of the title company, but the checks tendered by Alter and the purchasers had then no sufficient funds in bank for their payment, and the settlement had to be deferred until the necessary funds should be deposited. The title company also demanded that certification of the checks be procured by the drawers after the checks had been made good. Alter alone returned on the same day, February 23rd, after the close of banking hours, with his certified check upon the Union Trust Company, but the Frankils did not return with their check until the next day, February 24th. On that day, for the first time, the title company had in hand all the funds necessary to proceed with the transaction, it was completed, and the checks, duly indorsed to the title company, were deposited by it in its own banking account in the Equitable Trust Company. According to the usual practice, Alter's check was not presented then, on the same day, at the drawee bank, the Union Trust Company, but would have been presented next day, February 25th, through the clearing house, had not the emergency banking holiday in Maryland intervened, and both the clearing house and the drawee bank been closed on that day. The drawee has since been unable to make payment, and Alter's check has been returned unpaid. The Union Trust Company would have made payment on February 24th, if the check had been presented on that day.

The plaintiff contended that presentment on February 25th, if that had been possible, would have been within the reasonable time allowed because of two facts: That Alter assented to the withholding of his check from use

until the Frenkils should return with their check, which was necessary to going forward at all with the business to be accomplished, and that Alter delivered his check after banking hours on February 23rd, too late for use until the next day, and therefore too late for collection on the next day in ordinary course. It is questionable whether the first fact, Alter's assent to the withholding of his check, is supported by legally sufficient evidence. Some evidence offered on the point was excluded. See *Alexander v. Burchfield,* 7 Man. & G. 1061; *Lord Ward v. Oxford Co.* (1852) 2 De G. M. & G. 750; *Woodruff v. Plant,* 41 Conn. 344. The case is now decided on the second point, and this first point is passed unconsidered. The argument based on the delivery of the check after banking hours is that this made the earliest possible time for presentment in ordinary course, through the payee's bank and the clearing house, the second day after the delivery, and that this earliest possible time in ordinary course must be within the reasonable time allowed by law; and the reply is that the general rule, requiring presentment to be made on the day after delivery of the check, does not admit of this qualification for a delivery after banking hours.

The Negotiable Instruments Law contains only the general requirements that "presentment must be made within a reasonable time" after issue. Code, art. 13, sec. 90. And "in determining what is a 'reasonable time' * * * regard is to be had to the nature of the instrument, the usage of trade or business (if any), with respect to such instruments, and the facts of the particular case." Code, art. 13, sec. 16. The plaintiff has cited, in addition, the section of the Bank Collection Code, Code (Supp. 1929) art. 11, sec. 88 (B), allowing the next business day for collection by one bank from another in the same place, but that section relates directly only to the obligation of a collecting bank to its depositor, and not to the rights and liabilities between the depositor, as payee of the check, and the drawer of it. 1 *Morse, Banks and Banking* (6th Ed.) secs. 238 and 239. The cited sections of

the Negotiable Instruments Act have been regarded as merely expressing the law as it existed previously. *Brady, Bank Checks,* 135. And in modern times it is generally held that the reasonable time for presentment of a check on a drawee in the same place includes only the banking hours of the next business day after delivery. *Anderson v. Gill,* 79 Md. 312, 316, 29 A. 527; *First Nat. Bank v. Buckhannon Bank,* 80 Md. 475, 480, 31 A. 302; *Daniel, Negotiable Instruments* (7th Ed.) sec. 1776. A check is only a means of transferring money, and only such time as is reasonably necessary for taking possession of the money is allowed before the risk of loss from failure of the drawee bank becomes transferred to the holder.

The argument that any allowance of reasonable time must include time necessary for collection through banks and clearing houses in ordinary course has, in some jurisdictions, been held to require, as the plaintiff contends it should, the same allowance for checks delivered after hours on the day before deposit as for checks delivered on that day. *Loux v. Fox,* 171 Pa. 68, 33 A. 190; *Willis v. Finley,* 173 Pa. 28, 34 A. 213; *Clark v. Davis,* 48 Idaho, 214, 281 P. 3; *Zaloom v. Ganim,* 72 Misc. 36, 129 N. Y. S. 85, affirmed without opinion in 148 App. Div. 892, 132 N. Y. S. 1151; *Federal Land Bank v. Goodman,* 173 Ark. 489, 292 S. W. 659; *McFadden v. Keesee,* 179 Ark, 510, 16 S. W. (2nd) 994. And see 23 Bankers' Law Journal, 517; *Lovett v. Cornwell,* 6 Wend. (N. Y.) 369. In other jurisdictions the argument has been rejected. *Edmisten v. Herpolsheimer,* 66 Neb. 94, 92 N. W. 138; *Merchants' Nat. Bank v. Dorchester* (Tex. Civ. App.) 136 S. W. 551. In *Alexander v. Burchfield,* 7 Man. & G. 1061, it seems that the court may have considered that delivery of a check after banking hours still left the time for presentment restricted to the next day, but the reporters did not so construe the decision. To the court's statement that assent to the crossing of the check in that case, delivered after banking hours, amounted to an agreement through a drawer that the usual course of presentment through a banker should be observed, the reporters, in a footnote,

say: "Such an agreement might reasonably be implied, where the cheque proposed to be crossed was drawn or was delivered to the payee at too late an hour to render it probable that it was intended that it should be paid into the bankers of the payee or of some other holder on the day on which it was received."

Authorities cited state generally that the use by the payee of intermediary collecting banks cannot be permitted to extend the time allowed, and so prolong the risk on the drawer. *Daniel, Negotiable Instruments* (7th Ed.) sec. 1780; *Morse, Banks and Banking* (6th Ed.) sec. 421; *Crawford, Negotiable Instruments Law* (4th Ed.) 250; *Chitty, Bills, etc.*, *380. But these statements seem to be merely expressions of the unquestioned principle that a check is not intended to be put into circulation, and presentment for withdrawal of the money cannot be delayed by circulation beyond the time reasonably necessary for the withdrawal. Chitty so explains it. "Yet it must not be understood that the ultimate presentment for payment can be delayed for any indefinite time, by successive transfers between numerous parties, and by each party on the day after he has received the bill or note, transferring it to another; for if there should by that means be an unreasonable number of days occupied, the party or parties first transferring the instrument, and other of the earlier parties, would probably be considered discharged from liability, in case the bankers or person who issued the note so payable should in the mean time fail." *Chitty, Bills, etc.* *380. This does not seem to bear on the contention that, as by regular commercial practice presentment would follow on the second day after the late delivery of a check, it must be timely in the eyes of the law. And Crawford, notwithstanding his statement just referred to, cites for illustrations of the general rules the cases of *Loux v. Fox* and others which uphold the plaintiff's argument in this case. *Crawford, Negotiable Instruments Law* (4th Ed.) 249.

The regular practice of making collections through banks and clearing houses, and the regular consumption,

in the process, of one day in addition to the day of deposit, are facts of which the courts must take judicial notice. *Bank of Columbia v. Magruder*, 6 H. & J. 172. It is the practice contemplated in the provision of the Bank Collection Code, already cited, that presentment and collection may be made by the collecting bank on that next day. Code (Supp. 1929), art. 11, sec. 88 (B). The contention of the drawer, or defendant, in this case would seem practically to deny the facilities of clearing house collection for checks received by merchants, other than bankers, after banking hours— which may often mean a large proportion of the checks received, for business runs on after banking hours. In some of the authorities it has been suggested that a payee or holder might protect himself against danger from the restriction of his time allowance to the next day by refusing to receive checks after banking hours, or by presenting such checks to the drawees next day directly, or by making arrangements with his banker for presentments on that day, out of ordinary course. But the mere statement of these extraordinary proceedings with all the checks that might come in after banking hours seems sufficient to exclude them as reasonable alternatives. Business could not, and would not, be obstructed by refusal to receive checks after hours. Payees or holders would not be likely to employ agents to go to various drawees for direct presentment and collection of cash for many checks. Collections in cash are plainly undesirable, and the necessity of identification they would commonly involve would be burdensome. Collecting banks, moreover, could not be expected to depart from the ordinary routine for such checks with any frequency. It seems safe to say that, if adoption of these expedients should be required for the sake of conformity to a rule of presentment on the day after delivery or issue of a check, conformity in ordinary practice would not exist. If, on the other hand, it is still the purpose of the law to make its test of reasonableness conform to that of commercial usage, then the delay of

presentment in this case was reasonable. And this must, we think, be regarded as still the purpose of the law.

There would be no purpose to be subserved in a legal requirement that checks should be presented otherwise than in the ordinary course. The only conceivable design of the law would be to effectuate the purpose of the original parties to the checks that they should be used only for taking possession of money, not for circulation, and that they be presented therefore within the time necessary for taking the money over. And that design would be fulfilled by the ordinary clearing house presentment on the next day after the earliest day for deposit in the collecting bank.

The rule of law deliberately selected and adopted in the drafting of the Negotiable Instruments Act, and the whole rule of law, is that presentment must be made within a reasonable time after issue, having regard to the nature of the instrument, the usage of trade or business with respect to such instruments, and the facts of the particular case. Code, art. 13, secs. 90 and 16. It is a repetition of a very old general rule, in applications of which the courts have advanced from one measure of reasonableness to another, keeping step with accepted business usage as it has developed, and finding the tests of reasonableness in that usage. *Chitty, Bills*, \*369 and 379; *Bayley, Bills of Exchange*, \*32; 2 *Parsons, Promissory Notes, etc.*, 72. The application contended for by the defendant in this case would seem to involve an abandonment, to an extent, of this aim of the law, and this practice of adaptation. The court is of opinion that it is erroneous, and that the verdict for the defendant should not have been directed.

> *Judgment reversed, and a new trial awarded, with costs to the appellant.*